UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-CR-6088-UNGARO-BENAGES

UNITED STATES OF AMERICA,

   Plaintiff,

v.

MARCO MINUTO,

   Defendant.



### DEFENDANT MARCO MINUTO'S SPECIFIC
### BRADY REQUEST RE: COOPERATING WITNESSES

By Order dated March 28, 2001, this Court set a motion's deadline of June 4, 2001. The Court also set a deadline of July 5, 2001 for the government to respond to all defense motions. Mr. Minuto is aware that the prosecutor in this case is in trial, and anticipates to remain in trial until the end of the month. Mr. Minuto does not expect a response to this motion within the 10-day period provided by the Rules and has no objection to the government waiting until July 5, 2001 to respond to this motion.

Marco Minuto, through undersigned counsel and pursuant to Kyles v. Whitley, 514 U.S. 419 (1995), United States v. Bagley, 473 U.S. 667 (1985), United States v. Agurs, 427 U.S. 97 (1976), United States v. Giglio, 405 U.S. 150 (1972), Brady v. Maryland, 373 U.S. 83 (1963), Napue v. Illinois, 360 U.S. 264 (1959), and Federal Rule of Criminal Procedure 16, moves for an order directing the government to disclose and provide the specific information and material requested below.

Mr. Minuto requests that the government specifically and with particularity respond

to each request. "When a prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." Agurs, 472 U.S. at 106. Indeed,

> an incomplete response to specific [Brady] requests not only deprives the defense of certain evidence but has the effect of representing to the defense that the evidence does not exist. In reliance on this misleading representation, the defense might abandon lines of independent investigation, defense or trial strategies that it otherwise would have pursued.
>
> We agree that the prosecutor's failure to respond fully to a Brady request may impair the adversary process in this manner. And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the non-disclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption.

Bagley, 473 U.S. at 682-683.

Thus, the government must respond to these requests with the specificity and particularity with which each request is made. Additionally, the government must take affirmative steps to determine whether the information sought in this request exists in any government file held by any government agency. "[A]ny argument for excusing a prosecutor from disclosing what he does not happen to know boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure a fair trial." Kyles, 514 U.S. at 438. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." Id. at 437 (emphasis added).

## SPECIFIC REQUESTS

Regarding every witness, Mr. Minuto requests the following:

**1. THE CASE NAME AND CASE NUMBER OF ALL CASES IN WHICH THE WITNESS HAS ASSISTED OR COOPERATED WITH THE GOVERNMENT, AS WELL AS THE CASE NAME AND CASE NUMBER OF ANY TRIALS OR HEARINGS IN WHICH THE WITNESS HAS TESTIFIED:**

This information is necessary for Mr. Minuto to conduct a thorough investigation of every witness in this case. A witness's testimony in prior proceedings, or the nature and extent of his cooperation in other cases, are relevant to the witness's credibility and the witness's expectations as he cooperates or testifies against Mr. Minuto. This information is discoverable pursuant to Giglio and Bagley to aid in the impeachment of the witness.

The information sought in this request is in the government's sole possession. Since court records are not indexed by witness name, there is no way for Mr. Minuto to search the public records for cases in which witnesses have testified or cooperated. Additionally, since some witnesses may have cooperated but not testified at trial or other proceedings, it is virtually impossible for Mr. Minuto to investigate these witnesses without the Court directing the government to make the disclosure requested here.

Mr. Minuto requests that the information sought in this request be disclosed at least 45 days before trial. This time-frame will allow Mr. Minuto a reasonable opportunity to conduct his investigation of the witnesses against him. Waiting until after a witness has testified to disclose this information would be futile.[1]

---

[1] For example, if government witnesses have testified in other cases, Mr. Minuto needs at least 30 days to order and obtain transcripts of those proceedings. Additionally, if witnesses have cooperated in other cases, it would take an investigator a few weeks to conduct a background investigation and obtain any documents that may bear on the witness's credibility.

2. **ALL INFORMATION DETAILING WHETHER MONEY WAS GIVEN TO THE WITNESS OR THE WITNESS'S FAMILY, FRIENDS, OR ASSOCIATES IN ANY CASE, AS WELL AS INFORMATION REGARDING PROMISES OF IMMUNITY OR LENIENCY, PREFERENTIAL TREATMENT, OR OTHER INDUCEMENTS MADE TO THE WITNESS, OR TO ANY FAMILY MEMBER, FRIEND OR ASSOCIATE OF THE WITNESS, INCLUDING THE DISMISSAL OR REDUCTION OF CHARGES, PLEA NEGOTIATIONS, ASSISTING IN MATTERS OF SENTENCING OR DEPORTATION, OR PROMISES OR EXPECTANCIES REGARDING PAYMENTS FOR EXPENSES, TESTIMONY, OR ELIGIBILITY FOR ANY AWARD OR REWARD:**

This Court's Standing Discovery Order compels disclosure of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to witnesses. By this request, Mr. Minuto seeks a full record of all monies given to the witness and his family, friends, or associates, for any reason, including cooperation in this or any other case. Detailed information and records are needed to demonstrate the witness's motive and are discoverable under Giglio.

A witness's motive to testify in favor of one party and against another is a matter open to discovery and introduction in evidence. Indeed, the Eleventh Circuit Pattern Criminal Jury Instructions highlight the importance of this evidence in judging the credibility of testimony:

> For example, a paid informer, or a witness who has been promised he will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in her or her own case, may have a reason to make a false statement because he wants to strike a good bargain with the government.

11TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, SPECIAL INSTRUCTION 1.1. A witness who has received money or leniency from the government is motivated by these inducements to curry favor with the prosecutor and shade his testimony in the government's favor.

Similarly, unconsummated promises of financial or other awards or benefits are discoverable. Thus, where the witness harbors an expectation of future financial award,

such evidence is crucial to the defense. United States v. Williams, 954 F.2d 668 (11th Cir. 1992); United States v. Wilson, 904 F.2d 656, 658-9 (11th Cir. 1990).

**3.    ANY INFORMATION CONCERNING ACTUAL OR IMPLIED THREATS OF INVESTIGATION OR PROSECUTION (FOR EXAMPLE DEPORTATION, EXCLUSION BY INS, ADMINISTRATIVE MATTERS, ETC.) OF ANY WITNESS, HIS FRIENDS, FAMILY MEMBERS, OR ASSOCIATES, AS WELL AS INFORMATION PERTAINING TO THE CONDUCT PRECIPITATING SUCH INVESTIGATION OR PROSECUTION.**

Evidence that the government has threatened a potential witness to obtain the witness's cooperation is not only admissible, but may demonstrate unconstitutional interference with the defendant's right to free access to witnesses. United States v. Terzado-Madruga, 897 F.2d 1099 (11th Cir. 1990); United States v. Heller, 830 F.2d 150, 152 (11th Cir. 1987); United States v. Hendricksen, 564 F.2d 197,198 (5th Cir. 1977).

In United States v. Scheer, 168 F.3d 445 (11th Cir. 1999), the court reversed the defendant's conviction because the government failed to disclose the prosecutor's intimidation of a key government witness. In Scheer, the lead prosecutor told a witness who was on probation that if "he didn't come through for the government," the FBI agent in the room was going to "put the cuffs on [him]." Id. at 449. The defendant was not made aware of this conversation. The Scheer court concluded that in withholding this critical impeachment information from the defense constituted irreversible error.

Mr. Minuto also seeks information as to threats or promises made to any witness or his family to motivate the witness's cooperation. Such Giglio material is discoverable to allow Mr. Minuto to establish the witness's bias or hostility.

The threats/benefits evaluation is not limited to the witness alone. United States v. Partin, 493 F.2d 750, 757 (5th Cir. 1974). It is proper impeachment to question a witness

about the dismissal of charges against him, or about preferential treatment given to his family. Wasko v. Singletary, 966 F.2d 1377, 1380 (11th Cir. 1992); United States v. Nickerson, 669 F.2d 1016, 1018 (5th Cir. 1982), rev'd on other grounds, United States v. Bell, 678 F.2d 547 (5th Cir. 1982).

**4.    ANY INFORMATION PROVIDED BY THE WITNESS THAT CONFLICTS IN PART OR IN WHOLE WITH INFORMATION PROVIDED BY ANOTHER WITNESS, OR PRIOR INFORMATION PROVIDED BY THE SAME WITNESS:**

Any witness may be impeached by prior inconsistent statements. United States v. Winkles, 587 F.2d 705, 710 (5th Cir. 1979). Such inconsistencies should therefore be disclosed to the defendant prior to trial pursuant to Giglio v. United States. In Strickler v. Greene, 527 U.S. 263, 282 (1999), the Court found that documents prepared by an eyewitness that were inconsistent with her trial testimony constituted impeachment evidence. Statements of other witnesses that are inconsistent with the testimony of government's key trial witness should also be disclosed to the defendant as Brady material. United States v. Yizar, 956 F.2d 230, 234 (11th Cir. 1992). In Schneider v. Estelle, 552 F.2d 593, 595 (5th Cir. 1977), the court held that the government's failure to disclose an eyewitness' prior statement that was inconsistent with the testimony of the government's key trial witness was reversible error. And in United States v. Martino, 648 F.2d 367 (5th Cir. 1981), the court stated:

> As impeaching evidence, the prior inconsistent statement would fall within disclosure requirements because Brady encompasses impeachment evidence as well as evidence favorable to the accused on the issue of guilt.

Id. at 384. Additionally, evidence that impeaches an eyewitness' memory of an incident

should be disclosed to the defense. <u>United States v. Alzate</u>, 47 F.3d 1103 (11th Cir. 1995).

In <u>Jones v. Jago</u>, 575 F.2d 1164, 1166 (6th Cir. 1978), <u>cert. denied</u>, 439 U.S. 883 (1978), the court held that an eyewitness's statement which did not expressly exonerate the defendant but made no reference to the defendant's presence or participation in the offense was <u>Brady</u> material and the failure to disclose it required reversal. This type of <u>Brady</u> material, though negative or neutral in character, may be critical to the defense.

Thus, a report of a witness interview that reveals circumstantial evidence that a person other than the defendant may have been the actual perpetrator of the offense is Brady material. <u>Troedel v. Wainwright</u>, 667 F.Supp. 1456 (S.D. Fla. 1986). Even though such a statement may fall under the Jenks Act, the government is under a due process obligation to disclose it to the defense sufficiently in advance of trial or other pretrial hearing to allow the defense an adequate opportunity to investigate the evidence. <u>United States v. Campagnulo</u>, 592 F.2d 852, 859 (5th Cir. 1979).

5.    **ALL INFORMATION PERTAINING TO THE CRIMINAL ACTIVITIES OF THE WITNESS FOR WHICH THE GOVERNMENT HAS ELECTED, FORMALLY OR INFORMALLY, NOT TO PROSECUTE:**

A witness's history of criminal activity and other misconduct is relevant to his credibility, bias, motive and *modus operandi*. A witness who has committed a crime for which he has not been prosecuted has a motive to curry favor with the prosecutor in the hopes that he will never be prosecuted for it. Once the statute of limitations has run, the witness will be motivated by a sense of duty or obligation to pay back the favor.

6. **INFORMATION CONCERNING PRIOR MISCONDUCT BY THE WITNESS, INCLUDING ANY REFUSAL TO TESTIFY FOR OR ASSIST THE GOVERNMENT; ANY PRIOR ALLEGATION THAT THE WITNESS ENTRAPPED ANOTHER PERSON OR MADE FALSE STATEMENTS IN CONNECTION WITH ANY INVESTIGATION; ANY INFORMATION SUGGESTING OR TENDING TO SUGGEST THAT THE WITNESS OR THE INFORMATION SUPPLIED BY THE WITNESS IS UNRELIABLE OR UNTRUSTWORTHY; AND ANY PRIOR "BLACKBALLING" OF THE WITNESS BY ANY LAW ENFORCEMENT AGENCY:**

This request, as well as requests seven and eight below, seek information traditionally discoverable under Kyles, Bagley, Agurs, Giglio, Brady, Napue, and Federal Rule of Criminal Procedure 16. The information reveals a witness's true motivation to testify for the government and bears directly on the witness's credibility.

7. **INFORMATION CONCERNING CONDUCT BY THE WITNESS THAT REFLECTS ON THE WITNESS'S LACK OF CANDOR, TRUTHFULNESS, OR LAW-ABIDING CHARACTER.**

8. **ALL INFORMATION INDICATING THAT THE WITNESS, IN CONNECTION WITH THIS OR ANY OTHER CASE, HAS PROVIDED UNTRUTHFUL, FALSE, MISLEADING, INCOMPLETE, OR INACCURATE INFORMATION OR TESTIMONY TO ANY STATE OR FEDERAL LAW ENFORCEMENT OFFICER OR AGENCY, ANY STATE OR FEDERAL GRAND JURY, OR ANY STATE OR FEDERAL COURT.**

9. **INFORMATION REFLECTING THE NATURE AND EXTENT OF ASSETS OBTAINED BY THE WITNESS IN CONNECTION WITH HIS ILLEGAL ACTIVITIES:**

Ill-gotten assets shed light on the extent of the witness's involvement with criminal activity and his motive to protect such assets from forfeiture and taxes. The witness may have committed perjury in failing to report income from criminal activity, and such perjury is relevant to the witness's credibility and his motive to curry favor with the government. United States v. Shearer, 794 F.2d 1545, 1551 (11th Cir. 1986). Additionally, a witness whose ill-gotten assets were not forfeited by the government is inclined to shade his testimony to please the prosecutors in this (and any other) case.

**10.    IF GIVEN A POLYGRAPH EXAMINATION, THE QUESTIONS, ANSWERS, AND RESULTS OF THE EXAMINATION, AS WELL AS ANY INFORMATION CONCERNING THE REFUSAL OF ANY WITNESS TO SUBMIT TO A POLYGRAPH EXAMINATION:**

The Eleventh Circuit has recognized that polygraph examination results are admissible to impeach a witness's credibility. United States v. Tokars, 95 F.3d 1520 (11th Cir. 1996); United States v. Piccinonna, 885 F.2d 1529 (11th Cir. 1989). Polygraph results showing that a witness has made false or conflicting statements are relevant and discoverable under Brady and Giglio. While admissibility issues may be resolved at trial, the underlying facts material to impeachment must be disclosed prior to trial to allow for adequate defense preparation. Giglio v. United States, 405 U.S. 150 (1972).

Failure to disclose exculpatory or impeachment evidence contained in a polygraph report is error. Jacobs v. Singletary, 952 F.2d 1282 (11th Cir. 1992). In Jacobs, the Eleventh Circuit held that the government must disclose a witness's statements to a polygraph examiner when those statements differ in several respects from the witness's trial testimony. Failure to do so results in reversible error. Id. at 1289.

**11.    ALL INFORMATION REVEALING ANY POTENTIAL IMPAIRMENT OF THE CAPACITY OF ANY WITNESS TO OBSERVE, RECOLLECT, OR TESTIFY ABOUT THE EVENTS GIVING RISE TO THE CHARGES IN THIS CASE, INCLUDING IMPAIRMENTS OF SIGHT, HEARING, MEMORY, LANGUAGE, OR OTHER PHYSICAL OR PSYCHOLOGICAL DISABILITY.**

The information sought in this request, as well as requests 12 and 13 below, pertains to a witness's ability to recollect and to correctly relate the truth. As the Fifth Circuit explained in United States v. Partin,

> [i]t is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing. It all goes to the ability to comprehend, know, and correctly relate the truth.

493 F.2d 750, 762 (5th Cir. 1974); see also United States v. Lindstrom, 698 F.2d 1154, 1166 (11th Cir. 1983) (error to deny defendant access to witness's psychiatric records).

In United States v. Sellers, 906 F.2d 597 (11th Cir. 1990), the court acknowledged that a witness' drug use during "periods of trial and the transaction charged in the indictment" is relevant impeachment evidence. Id. at 262. Similarly, in United States v. Garner, 581 F.2d 481 (5th Cir. 1978), the court held that the testimony of witnesses who had used heroin should be weighed with caution. The panel highlighted that even though the witness had undergone methadone treatment and was no longer using heroin at the time he observed the events of the case, it was up to the jury to "take this information into account in weighing the witness's credibility." Id.; see also United States v. Collins, 472 F.2d 1017, 1018 (5th Cir. 1972) (a witness's use of narcotics is material; testimony of a narcotics user must be considered with caution).

     **12.** **ALL INFORMATION INDICATING THAT ANY WITNESS MAY HAVE SUFFERED FROM A MENTAL OR EMOTIONAL DISEASE, DISORDER, ILLNESS, OR DEFECT AT ANY TIME DURING THE TIME SPAN ALLEGED IN THE INDICTMENT OR AT THE TIME THE WITNESS TESTIFIES.**

     **13.** **ALL INFORMATION INDICATING WHETHER THE WITNESS MAY HAVE USED COCAINE, MARIJUANA, OTHER CONTROLLED SUBSTANCE, OR USED ALCOHOL TO EXCESS AT ANY TIME DURING THE TIME SPAN ALLEGED IN THE INDICTMENT FILED IN THIS CASE OR AT THE TIME THE WITNESS TESTIFIES.**

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD, SUITE 1300, MIAMI, FL 33131• (305) 371-6421

## CONCLUSION

The information sought in these specific requests is favorable to Mr. Minuto on the issues of guilt or punishment. These requests also seek impeachment information tending to discredit the government's witnesses. To the extent that certain materials may not have been requested, Mr. Minuto request that all materials that may be exculpatory or impeaching, or otherwise favorable to the defendant, be disclosed reasonably in advance of trial.

Respectfully submitted,

**BLACK, SREBNICK & KORNSPAN, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
(305) 371-6421

By: _/s/ Howard Srebnick_
HOWARD M. SREBNICK, ESQ
Florida Bar Number 919063
Attorney for Marco Minuto

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on ___6/1___, 2001 a true and correct copy of the foregoing was furnished by mail to:

Michael J. Dittoe, Esq.
Assistant United States Attorney
500 East Broward Boulevard
7th Floor
Fort Lauderdale, Florida 33394-3002

Bruce A. Zimet, Esq.
Counsel for Nicolo Mariani
One Financial Plaza
Suite 2612
Fort Lauderdale, Florida 33394

William J. Hunt, Esq.
Counsel for Joseph Minuto
William J. Hunt & Associates
155 Polifly Road
Suite 200
Hackensack, New Jersey 07601

Kerry A. Lawrence, Esq.
Counsel for Chris Greco
Briccetti, Calhoun & Lawrence, LLP
81 Main Street
Suite 450
White Plaines, New York 10601

By: _____
**HOWARD M. SREBNICK, ESQ.**
Attorney for Marco Minuto