UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-CR-6088-UNGARO-BENAGES



UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARCO MINUTO,

    Defendant.

## MARCO MINUTO'S MOTION FOR A LIST OF GOVERNMENT WITNESSES

Defendant Marco Minuto is scheduled for trial on August 27, 2001. To date, the government has disclosed the names of three cooperating defendants it will call as witnesses at trial. Other than these cooperating defendants and the lead FBI agent, the government has not identified who else it intends to call as witnesses at trial.

The broad and lengthy conspiracies charged in the indictment lead us to believe that numerous individuals will be taking the stand on the government's behalf. Count One, for example, charges a RICO conspiracy spanning over eight years. The indictment alleges that Mr. Minuto collected unlawful gambling debts "from various individuals," but does not identify those individuals; that Mr. Minuto threatened debtors with acts of violence, but does not identify the debtors; that Mr. Minuto directed a co-defendant to recruit bettors, but does not identify the bettors; that the defendants directed witnesses to testify falsely, but does not disclose the names of the witnesses.

Count Five alleges that over a span of six years, Mr. Minuto conspired to use

-1-

extortionate means to collect extensions of credit "from numerous individuals in South Florida." The names of these "numerous individuals" are not disclosed.

Mid-trial disclosure of the government's witnesses will deprive us of an opportunity to investigate their backgrounds, test their expected testimony against other evidence in the case, and locate rebuttal evidence or witnesses. In order to avoid mid-trial surprises and a mid-trial motion for a continuance, we are seeking the court's intervention now, prior to trial.

### MEMORANDUM OF LAW

"'While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators.'" United States v. Cronic, 466 U.S. 648, 657 (1984). It is a "search for truth" in which the government is not always permitted to maintain "'poker game' secrecy . . . ." Wardius v. Oregon, 412 U.S. 470, 473 (1973); see also Williams v. Florida, 399 U.S. 78, 82 (1970) ("[t]he adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played"); United States v. Kelly, 420 F.2d 27, 29 (2d Cir. 1969) (criticizing "trial by ambush"). Indeed, the Supreme Court in Wardius emphasized that because the government has "inherent information gathering advantages," if there is to be "any imbalance in discovery rights, it should work in the defendant's favor." 412 U.S. at 475 n. 9.

We submit that the Fifth and Sixth Amendments to the Constitution require that in this case, the government provide advanced notice to the defense of the identities of its witnesses. Cf. United States v. Opager, 589 F.2d 799, 804 (5th Cir. 1979) ("one of the first

things responsible counsel does in preparing a case is to seek to interview those witnesses involved in the litigation" and obtain "information" that can be "used to discredit" the witness' testimony); United States v. Sclamo, 578 F.2d 888, 890 and n.1 (1st Cir. 1978) (noting that disclosure of a witness list "promotes fairness and judicial efficiency" and suggesting that there may be cases in which there is a "compelling need for disclosure"); United States v. Madeoy, 652 F. Supp. 371, 375 (D.D.C. 1987) (ordering government to provide witness list), aff'd, 912 F.2d 1486 (D.C. Cir. 1990), cert. denied, 498 U.S. 1105 (1991); United States v. Price, 448 F. Supp. 503, 507-518 (D. Colo. 1978).

Clearly, this Court has the discretion to order the government to produce a witness list. That is precisely what Judge Paine did in the case of United States v. Green, 1992 WL 246869 (S.D. Fla. 1992 (Paine, J.) (attached as Exhibit A). Indeed, under the Federal Rules of Evidence, this Court is expressly empowered to

> exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

FED. R. EVID. 611.

The duration and scope of the RICO conspiracy, as well as the duration of the extortion conspiracy, make this an appropriate case for ordering a witness list. How can we expose the biases, motivations, and credibility deficiencies of witnesses about whom we know nothing? Absent a witness list, we will be forced to "shoot from the hip" during cross-examination and will be prevented from engaging the government's witnesses in probative confrontation, as envisioned by the Sixth Amendment.

Mr. Minuto is facing at least 25 years in prison if the jury believes the testimony of

-3-

these now faceless, nameless, government witnesses. Civil lawyers would cry foul if a litigant "sandbaged" them with one surprise witness at trial, let alone the numerous people the government will be calling at Mr. Minuto's trial. Indeed, civil lawyers not only have a right to a witness list; they have a right to depose every witness prior to trial. Yet, with the defendant's freedom at stake, we are expected to cross-examine witnesses whose identities will remain unknown until trial. The right to due process, confrontation, and compulsory process require that Mr. Minuto not be blind-sided at trial by witnesses who are total strangers to him.

Respectfully submitted,

**BLACK, SREBNICK & KORNSPAN, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
(305) 371-6421

By: _____
HOWARD M. SREBNICK, ESQ
Florida Bar Number 919063
Attorney for Marco Minuto

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on  June 4, 2001 a true and correct copy of the foregoing was furnished by mail to:

Michael J. Dittoe, Esq.
Assistant United States Attorney
500 East Broward Boulevard
7th Floor
Fort Lauderdale, Florida 33394-3002

Bruce A. Zimet, Esq.
Counsel for Nicolo Mariani
One Financial Plaza
Suite 2612
Fort Lauderdale, Florida 33394

William J. Hunt, Esq.
Counsel for Joseph Minuto
William J. Hunt & Associates
155 Polifly Road
Suite 200
Hackensack, New Jersey 07601

Kerry A. Lawrence, Esq.
Counsel for Chris Greco
Briccetti, Calhoun & Lawrence, LLP
81 Main Street
Suite 450
White Plaines, New York 10601

By: _____
HOWARD M. SREBNICK, ESQ.
Attorney for Marco Minuto

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD, SUITE 1300, MIAMI, FL 33131• (305) 371-6421

1992 WL 246869
(Cite as: 1992 WL 246869 (S.D.Fla.))

Only the Westlaw citation is currently available.

United States District Court, S.D. Florida.

UNITED STATES of America
v.
Gerald Lamar GREEN, Defendant.

No. 91-14025-CR-PAINE.

Sept. 14, 1992.

William Michael, Jr., Asst. U.S. Atty., for United States.

Emory Williams, for defendant.

ORDER ON MOTION FOR DISCLOSURE OF WITNESSES

PAINE, District Judge.

*1 Defendant, GERALD LAMAR GREEN ("GREEN"), has been indicted for conspiring to commit, and committing, two armed bank robberies (DE 1, 33). By the above-referenced motion (the "Motion") (DE 89), GREEN seeks an order requiring the UNITED STATES OF AMERICA (the "Government") to disclose:
  (a) The name and address of each witness whom the Government intends to call;
  (b) The name and address of each cooperating witness who will testify at trial or has information favorable to GREEN;
  (c) The name and address of each potential witness that the Government has interviewed; and
  (d) The name and address of each expert witness. [FN1]

While GREEN concedes the Government's sole argument--that neither Federal Rule of Criminal Procedure 16, nor the Standing Discovery Order issued pursuant thereto, requires the disclosure of witness lists in a typical federal prosecution--he claims a due process and equal protection interest in the information. GREEN notes that full discovery is available in civil cases. [FN2] Moreover, disclosure of witness lists is statutorily mandated for treason or other capital cases. [FN3] GREEN argues that his potential penalty, forty years in prison, warrants similar treatment.

Analysis



Page 1

The former Fifth Circuit Court of Appeals has held that "[a]part from the Congressionally created exception in capital cases, the granting of a defense request for a list of adverse witnesses is a matter of judicial discretion...." *United States v. Chaplinski*, 579 F.2d 373, 375 (5th Cir.1978) (quoting *United States v. Hancock*, 441 F.2d 1285, 1286 (5th Cir.1971)); see generally 2 Charles A. Wright, *Federal Practice and Procedure* § 254 (2d ed. 1982). [FN4] The Eastern District of North Carolina, citing another decision of the former Fifth Circuit, perhaps best summarized the analysis:
  Generally, the rule for disclosure can be stated succinctly: to obtain a government witness list, a defendant must make a specific or "particularized" showing that such disclosure is both material to the preparation of his defense and reasonable in light of the circumstances. A conclusory statement that a witness list is needed to prepare for trial in a routine case is not sufficient.
  Although the written rule of law is thus quickly discerned, these principles are far more easily stated than applied. Each case must turn on its own particular facts and decisions in prior cases are rarely controlling because the circumstances and probable evidence differ from case to case. Application of the general principles delineated above in any case requires an initial understanding of the basis for the rules themselves.
  As the defendants argue, the disclosure of the identity of the government's witnesses is desirable and, at times, required to aid the defense in the preparation for trial and to prevent invidious trial by ambush. *See United States v. Opager*, 589 F.2d 799, 804 (5th Cir.1979). One of the most immediate tasks for responsible counsel in preparing for any case is to seek to interview those witnesses involved in the transactions which form the basis for the litigation. Indeed, in a number of circumstances, a failure to so investigate can result in cognizable claims of ineffective assistance of counsel. In the civil context, our courts clearly recognize the importance of this task by demanding, at a minimum, that counsel exchange witness lists well in advance of trial. If this is so in the civil context, the defendants' interest in obtaining this same information in a criminal case, where their very liberty is at stake, is even more compelling. *Opager*, 589 F.2d at 804.
  *2 Balancing this substantial interest of the defendants is, however, often an equally important governmental interest. Obviously, the government and the court must be concerned with the dangers of intimidation of witnesses, subornation of perjury,

1992 WL 246869                                                    Page 2
(Cite as: 1992 WL 246869, *2 (S.D.Fla.))

and physical harm to potential witnesses.

*United States v. Stroop*, 121 F.R.D. 269, 275 (E.D.N.C.1988) (other citations omitted).

Thus, the court, in exercising its discretion, should consider (i) whether the defendant is charged with a crime of violence, (ii) whether he has been previously arrested or convicted for a crime of violence, (iii) whether the anticipated evidence will consist primarily of testimony, which is subject to sudden change, or documents, which are not, (iv) whether key witnesses are within the control of the government and are not openly available to the defense for investigation and interview, (v) whether there is a realistic possibility that disclosing witnesses' names will jeopardize their appearance and truthful testimony at trial, (vi) whether the offense charged and anticipated evidence are complex, requiring substantial investigation, and (vii) whether the defendant has limited funds to undertake and prepare his defense. *United States v. Payden*, 613 F.Supp. 800, 821 (S.D.N.Y.1985); *Stroop*, 121 F.R.D. at 275-76.

While the parties, in their memoranda, offer no discussion of this balancing test, the undersigned has gleaned several of the key criteria from a review of the full record.

(i) Nature of Charge

GREEN has been charged with participation in two armed bank robberies (DE 1, 33); he has, in fact, been detained pending trial due to the severity of the charges (DE 19). Moreover, the Government intends to offer evidence that, on an night between the two robberies, GREEN, Ron Smith, Tracy Whitfield, and Phillip Pack attempted to purchase marijuana from Donald Dunkley. An argument ensued, and Smith shot Dunkley with GREEN's gun, which was fired during both robberies (*see* DE 22, 39, 53).

(ii) Criminal History

Apart from these recent incidents, however, it does not appear that GREEN has a history of violent crimes. Indeed, his mother's unrebutted testimony at the September 11, 1991 detention hearing before United States Magistrate Judge J. Michael Brennan indicates that GREEN had never been in "serious trouble" before (DE 77 at 29).

(iii) Role of Testimonial Evidence

The Government witnesses called at trial will seemingly fall into three categories: eyewitnesses to the two bank robberies, persons who overheard GREEN admit to robbing a bank with the co-Defendants (*see* DE 77 at 16-17), and experts to match tire tracks left at Florida Federal Savings Bank, the site of the second robbery, to a car owned by GREEN's mother, and to match bullets found in both banks to a gun owned by GREEN. The apparent role of documentary evidence is minimal. Rather, the credibility of the live witnesses will likely determine the outcome.

(iv) Government Control of Witnesses

*3 The Government has, in its Response to Defendant's Notice of Alibi (DE 30, 91), identified witnesses who will place GREEN at Florida Federal Savings Bank on the date in question. While the identity and location of the remaining witnesses is unclear, GREEN contends (DE 89), and the Government has not disputed, that the case will rest primarily upon the testimony of alleged accomplices and co-conspirators, who are now cooperating witnesses and may not be "openly available" for interview. *See Stroop*, 121 F.R.D. at 275.

(v) Risk of Witness Tampering

The Government does not articulate any concern for its intended witnesses.

(vi) Complexity of Case and Need for Investigation

While the case is not factually complex, GREEN makes repeated reference to the maximum applicable penalty: forty years' incarceration. This factor operates as a two-edged sword: while the severity of the potential punishment distinguishes this prosecution from a "routine case," and emphasizes the need for adequate preparation, it also increases the incentive for witness tampering.

(vii) Funds

GREEN is represented by private counsel and makes no reference to financial limitations.

On balance, GREEN has adequately established that, in order to prepare critical cross-examination, he should be given the name and address of each non-expert witness that the Government intends to call in its case-in-chief. The scope of expert witness cross-examination, however, is more scientific and documentary, unrelated to the underlying facts.

1992 WL 246869 Page 3
(Cite as: 1992 WL 246869, *3 (S.D.Fla.))

Moreover, GREEN has already received the results of scientific tests in accordance with paragraph B2 of the Standing Discovery Order. Thus, a list of expert witnesses will not be required. Finally, GREEN has not shown a sufficient need to learn the identity of non-witness interviewees, since they will not be cross-examined. [FN5]

Conclusion

The Court disagrees that GREEN has a constitutional right to treatment under Title 18, United States Code, Section 3432, but will nonetheless order disclosure of non-expert prosecution witnesses. Although Section 3432 itself requires only three days' notice, and GREEN has not sought earlier disclosure, the Court believes that at least one week is necessary, under the circumstances, to interview witnesses.

It is therefore ORDERED and ADJUDGED as follows:

1. The Motion for Disclosure of Witnesses (DE 89) is GRANTED in part and DENIED in part.

2. The Government shall provide to GREEN, at least seven days before the commencement of trial, a list of the non-expert witnesses to be produced at trial for proving the indictment, stating the place of abode of each such witness.

3. GREEN shall not, however, be furnished with a list of the expert witnesses, or persons interviewed but not to be produced at trial.

   FN1. GREEN also requested, in part (e), the criminal record of each person described in parts (a) through (d). Upon the Government's representation that it has, in accordance with paragraph E of the Standing Discovery Order (DE 8, 51), disclosed the criminal records of all potential witnesses, this part of the Motion is declared moot.

   FN2. *See generally* Fed.R.Civ.P. 26-37.

   FN3. "A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each venireman and witness." 18 U.S.C. § 3432.

   FN4. These cases impliedly recognize, and the Court expressly holds, that the different treatment of discovery in civil or capital cases does not violate the United States Constitution.

   FN5. Of course, any exculpatory information held by a non-witness interviewee must be disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), which is expressly incorporated into paragraph C of the Standing Discovery Order.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works