UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-CR-6088-UNGARO-BENAGES

UNITED STATES OF AMERICA,                 :

    Plaintiff,                                :

                                            :

v.                                        :

                                            :

MARCO MINUTO,                             :

    Defendant.                                :

. . . . . . . . . . . . . . . . . . . . . . . . . . . . :

### MARCO MINUTO'S MOTION FOR RECONSIDERATION OF DENIAL OF MOTION FOR ADDITIONAL TIME TO FILE MOTIONS PERTAINING TO NEW YORK INDICTMENT

        The Defendant, Marco Minuto, through undersigned counsel, respectfully requests

that this Court reconsider its denial of Mr. Minuto's motion for additional time to file pretrial

motions pertaining to a 45-page RICO indictment returned against Mr. Minuto just five days

prior to expiration of the motions deadline set in this case.  In support of this motion,

undersigned counsel states as follows:

        1.      Mr. Minuto is charged in this case in Count One with RICO conspiracy, Count

Two with money laundering conspiracy, Count Three with Hobbs Act conspiracy, Count

Four with substantive Hobbs Act violation, Count Five with conspiracy to collect debts by

extortionate means, Count Six with collection of a debt by extortionate means, and Count

Seven with conducting an  interstate gambling business.

        2.      Undersigned substituted as Mr. Minuto's counsel on March 28, 2001.

        3.      Discovery in this case is substantial. Over a span of 90 days, the FBI

intercepted hundreds of telephone calls, yielding over 240 audiotapes of conversations.

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD., SUITE 1300, MIAMI, FL 33131• (305) 371-6421

Additionally, the criminal history of cooperating government witnesses dates back more than 10 years, requiring substantial investigative work. Preparing this case for trial is not a simple task.

    4.    Undersigned counsel has been working diligently to prepare for trial. To date, we have filed the following pleadings and pretrial motions:

- Marco Minuto's Rule 16(a)(1)(E) Demand for Summary of Expert Witness Testimony

- Defendant Marco Minuto's Request for Notice of 404(b) Evidence

- Marco Minuto's Specific Brady Request for Debriefing or Proffer Notes, Reports, and Communications

- Defendant Marco Minuto's Specific Brady Request Re: Cooperating Witnesses

- Marco Minuto's Motion to Compel Inspection of Personnel Files of Testifying Agents and Officers

- Marco Minuto's Motion for Production of Impeachment and "Bad Acts" Materials Pertaining to all Cooperating Witnesses, Including David Alwais

- Defendant Marco Minuto's Specific Brady Request Regarding Polygraph Examinations

- Defendant Marco Minuto's Motion to Admit Polygraph Evidence at Trial

- Marco Minuto's Motion to Interview all Government Witnesses

- Marco Minuto's Motion to Unseal Documents Pertaining to Cooperating Government Witnesses

- Marco Minuto's Motion to Seal Affidavit of Jackie Perczek, Esq.

- Affidavit of Jackie Perczek, Esq.

- Marco Minuto's Motion for a List of Government Witnesses

- Marco Minuto's Motion to Disclose Whether any of the Government's Confidential Sources was, or Held Himself out to be, an Attorney

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD., SUITE 1300, MIAMI, FL 33131• (305) 371-6421

- Marco Minuto's Motion for Production of Pre-Sentence Investigation Reports of Cooperating Government Witnesses

- Marco Minuto's Motion to Dismiss Count Two for Failure to State an Offense

- Marco Minuto's Motion to Suppress Fruits of Wiretaps

- Marco Minuto's Motion to Dismiss Count Five or, Alternatively, for a Bill of Particulars, and Motion for a Bill of Particulars as to Count Six

- Marco Minuto's Motion for Additional 20 Days to File Motions Pertaining to New Your Indictment

5.      As we were preparing to file all of these motions by June 4, 2001, a grand jury in New York returned a 45-page RICO indictment against Mr. Minuto on May 29, 2001. A copy of that indictment is attached as Exhibit A. With only five days remaining until the June 4, 2001 pretrial motions deadline in this case, we were working long days to complete the pretrial motions outlined above. A great deal of time, effort, and human resources were dedicated to preparing and completing these motions. Undersigned counsel could not have completed all the pretrial motions by June 4, 2001 and also prepared meaningful motions addressing any issues that the New York indictment may raise. The five days between May 29, 2001 when the indictment was returned, and June 4, 2001, when pretrial motions were due, were not sufficient to permit effective review of a 45-page RICO indictment and effective preparation of pretrial motions addressing that indictment.

6.      Mr. Minuto respectfully requests that the Court reconsider its ruling and grant him until June 22, 2001 to prepare motions pertaining to the New York indictment. Trial in this case is not imminent. We are specially-set to start on August 27, 2001, which is two and a half months away. We are not on the eve of trial or on the eve of hearings on pretrial motions. In fact, a hearing on pretrial motions has not been set. The government has not responded to our motions and does not have to do so until July 5, 2001. Mr.

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD., SUITE 1300, MIAMI, FL 33131• (305) 371-6421

Minuto then has 10 days to reply. Granting this short extension will not prejudice the government or the Court and will ensure that Mr. Minuto has had a meaningful opportunity to defend himself.

7.      We attempted to reach AUSA Michael Dittoe, the prosecutor in this case, but were unable to do so because he is in trial. We left a message for him to call but have not heard back.

Respectfully submitted,

**BLACK, SREBNICK & KORNSPAN, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
(305) 371-6421


By: _____ for

**HOWARD M. SREBNICK, ESQ**
Florida Bar Number 919063
Attorney for Marco Minuto

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on ⟨June 14⟩, 2001 a true and correct copy of the foregoing was furnished by mail to:

Michael J. Dittoe, Esq.
Assistant United States Attorney
500 East Broward Boulevard
7th Floor
Fort Lauderdale, Florida 33394-3002

Bruce A. Zimet, Esq.
Counsel for Nicolo Mariani
One Financial Plaza
Suite 2612
Fort Lauderdale, Florida 33394

William J. Hunt, Esq.
Counsel for Joseph Minuto
William J. Hunt & Associates
155 Polifly Road
Suite 200
Hackensack, New Jersey 07601

Kerry A. Lawrence, Esq.
Counsel for Chris Greco
Briccetti, Calhoun & Lawrence, LLP
81 Main Street
Suite 450
White Plaines, New York 10601

By: _____

HOWARD M. SREBNICK, ESQ.
Attorney for Marco Minuto

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD., SUITE 1300, MIAMI, FL 33131• (305) 371-6421

05/30/2001 08:05
05-29-2001 05:23PM   FROM IANNUZZIandIANNUZZI
Case 0:00-cr-06088-dlg Document 239   Entered on FLSD Docket 06/15/2001   Page 6 of 49

PAGE 02
P.02
12015291670

BR:TAF     2113
F. # 1999R02713
Lukov.Indictment1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

                    -against-

ALEX LUKOV, also known as
        "Oleg Lukov,"
        "Oleg Lukovos,"
        "Alex Lukovos,"
        "Yakov Mogilevich,"
        "Alex Romeo,"
        "Alex the Russian," and
        "Edward Gershovich,"
MARCO MINUTO, also known as
        "The Old Man" and
        "The Other Guy,"
JOHN ROMEO,
JOSEPH CASSESE, also known as
        "Little Joe,"
BORIS KERZHNER, also known as
        "Borya,"
GIOVANNI LUBRANO, also known as
        "Joseph,"
        "Giovi,"
        "Young Joe," and
        "John," and
IRINA KERZHNER,

                    Defendants.

- - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 00-1197 (S-2)(SJ)
(T. 18, U.S.C., §§ 371,
1341, 1343, 1951,
1956(h), 1959(a)(3),
1621(1), 1962(c),
1962(d), 1963, 982, 2
and 3551 et seq; T. 21,
U.S.C., § 853(p))

THE GRAND JURY CHARGES:

## INTRODUCTION TO ALL COUNTS

1.    In or about and between 1990 and the filing of

this Superseding Indictment, the defendants ALEX LUKOV, also

known as "Oleg Lukov," "Oleg Lukovos," "Alex Lukovos," "Yakov

Mogilevich," "Alex Romeo," "Alex the Russian," and "Edward

05/30/2001  08:09  Case 0:00-cr-06088-dw649430document 239    Entered on FLSD Docket 06/13/2001    Page 7 of 49
05-29-2001 05:24PM   FROM  IANNUZZIandIANNUZZI-

PAGE  03
P.03
1-29152915/14

2

Gershovich," MARCO MINUTO, also known as "The Old Man" and "The
Other Guy," JOHN ROMEO, JOSEPH CASSESE, also known as "Little
Joe," and BORIS KERZHNER, also known as "Borya," operated an
organization (hereinafter referred to as the "Lukov
Organization"). These defendants, along with others, were
members and associates of the Lukov Organization, an "enterprise"
as that term is defined in Title 18, United States Code, Sections
1959(b)(2) and 1961(4), that is, a group of individuals
associated in fact. The criminal schemes engaged in by the Lukov
Organization were originated by the defendant ALEX LUKOV, who
also oversaw the Organization's day-to-day operations. The Lukov
Organization operated primarily in the Eastern District of New
York.

2.   At all times relevant to this indictment, the
Lukov Organization was affiliated with, and operated under the
protection of, the Luchese Organized Crime Family of La Cosa
Nostra (the "Luchese Family"), an organized criminal group that
operated in the Eastern District of New York and elsewhere.

The Purposes, Methods and Means of the Enterprise

3.   The principal purpose of the Lukov Organization
was to generate money for its members through the planning and
execution of fraudulent schemes.

4.   These schemes included, but were not limited to, a
scheme to defraud New York State of gasoline excise taxes and a

3

scheme to defraud Citgo Petroleum Corporation ("Citgo") of petroleum products.

5.   In order to maintain its operations and collect its illegal proceeds, members of the Lukov Organization resorted to the actual and threatened use of force, violence and fear.

The Lukov Organization Defendants

6.   The defendant ALEX LUKOV was the manager and operator of various companies (hereinafter referred to as the "Lukov Companies") involved in the purchase, sale and distribution of gasoline and other petroleum products.  The Lukov Companies regularly distributed "bootleg" gasoline, that is, gasoline imported into New York State without payment of all applicable New York State taxes.  The Lukov Companies, which were nominally owned and operated by front men installed by LUKOV in an effort to shield himself and others from criminal and civil liability, included Panther Oil Corporation ("Panther"), Dye-Wrecked Petroleum ("Dye-Wrecked"), Nevada Enterprises ("Nevada"), Express I Transportation, Inc. ("Express I"), P.R. Best ("Best"), Firm International ("FIRM"), and Prestige International ("Prestige"), all of which had offices in the Eastern District of New York.  LUKOV was also an undisclosed partner in AOB Medical Supply, Inc. ("AOB"), a medical supply company incorporated in June 2000.

4

7. In or about and between 1995 and the filing of this Superseding Indictment, the defendant MARCO MINUTO was a made member of the Luchese Family and a member of the Lukov Organization. In or about and between 1995 and the filing of this Superseding Indictment, MINUTO supervised and protected the Lukov Organization and resolved disputes related to the illegal activities of the Organization. In return for such supervision and protection, MINUTO received regular payments from the illegal earnings generated by the criminal activity of the Lukov Organization.

8. The defendant JOHN ROMEO was an associate of the Luchese Family and a member of the Lukov Organization. ROMEO was the defendant ALEX LUKOV's partner in many of the Lukov Companies and, as such, received a portion of the Lukov Organization's profits from its fraudulent schemes, including its scheme to defraud New York State of gasoline excise taxes.

9. The defendant JOSEPH CASSESE was a member of the Lukov Organization and was the President of Whirled-Wide Petroleum ("Whirled-Wide"), a wholesaler and distributor of gasoline and petroleum products, which, in or about and between 1997 and 2000, sold bootleg gasoline to Dye-Wrecked.

10. The defendant BORIS KERZHNER was a member of the Lukov Organization and a partner in AOB. He took part in

5

managing the illegal operations of the Lukov Organization and
collecting the Lukov Organization's illegal profits.

<b>COUNT ONE</b><br>
(Racketeering)

11. The allegations contained in paragraphs 1 through
10 are hereby realleged and incorporated as if fully set forth
herein.

12. In or about and between April 1990 and November
2000, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ALEX
LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex
Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex the Russian"
and "Edward Gershovich," MARCO MINUTO, also known as "The Old
Man" and "The Other Guy," JOHN ROMEO, JOSEPH CASSESE, also known
as "Little Joe," and BORIS KERZHNER, also known as "Borya," being
persons employed by and associated with the Lukov Organization,
which enterprise engaged in, and the activities of which
affected, interstate commerce, knowingly and intentionally
conducted and participated, directly and indirectly, in the
conduct of the affairs of that enterprise through a pattern of
racketeering activity, as defined in Title 18, United States
Code, Sections 1961(1) and 1961(5), consisting of the
racketeering acts set forth below:

05-29-2001 05:26PM FROM IANNUZZIandIANNUZZI

PAGE 07
P.07

6

## RACKETEERING ACT ONE
### (Mail and Wire Fraud - Bootleg Gasoline)

Motor Fuel Distribution

13. A substantial portion of the illegal income of the
LUKOV Organization was derived from the illegal distribution of
automotive fuel.

14. Automotive fuel distributors and transporters
obtained automotive fuel from terminals and then delivered it to
retail filling stations and other outlets. Most terminals in the
New York metropolitan area were located in New Jersey, including
but not limited to, Sewaren, Linden, Perth Amboy, and Newark.

15. Licensed motor fuel distributors contracted with
account holders at terminals to purchase bulk quantities of motor
fuel and then contracted with transporters to bring this fuel
from the terminal to retail filling stations.

16. Most New Jersey terminals were computerized and
issued to drivers employed by automotive fuel transportation
companies entry/access cards similar to automated teller cards or
credit cards. In order to obtain entry/access cards,
transportation companies entered into "Carrier Card Agreements"
with suppliers. Drivers used entry/access cards to gain access
to terminal loading stations and fill their trailers with the
particular type of automotive fuel desired. At the terminal,
drivers identified the destination of the automotive fuel. After
the truck was loaded with automotive fuel, the driver received a

7

bill of lading which indicated the type of product that had been
received, the quantity of the product, the purchaser, the seller
and the destination state.

New York State Excise Taxes on Motor Fuel ° ° °

17.  New York State Tax Law Art. 37 § 1812 required any
person who imported or caused the importation of 2900 gallons or
more of motor fuel into the State of New York within a 90 day
period to be registered with the New York State Tax Department
(the "Tax Department") as a "distributor of motor fuel."  In
addition, New York State Tax Law Art. 37 § 1812-b required any
person who imported motor fuel or caused the importation of motor
fuel in any quantity into the State of New York State for use,
distribution, storage or sale to be licensed by the State of New
York as an "importing transporter."  Accordingly, only licensed
distributors and transporters were permitted to import gasoline
in bulk from outside the State of New York.

18.  New York State Tax Law Art. 12-A required all
persons involved in the distribution of motor fuel in the State
of New York to maintain Tax Department documents (a) specifying
the quantities of motor fuel that had come into their possession
and the disposition of such motor fuel, and (b) certifying that
taxes had been paid on such motor fuel.

19.  With regard to the payment of state taxes,
transporters of motor fuel within the State of New York were

9

taxes were paid at the time that gasoline was obtained at the
terminal.

23.  The tax imposed by the State of New York on
wholesale shipments of gasoline imported into the state was
substantially higher than the tax imposed by the State of New
Jersey on wholesale shipments of gasoline obtained and delivered
within the State of New Jersey.  Because of the differential
between New York and New Jersey state gasoline taxes, a gasoline
transporter, distributor or wholesaler who imported gasoline from
the State of New Jersey to the State of New York but fraudulently
indicated that the gasoline was being delivered in the State of
New Jersey would substantially reduce the taxes paid on each
shipment.  In this manner, a gasoline transporter, distributor or
wholesaler would avoid paying New York State taxes and thereby
earn illegal profits on each gallon of gasoline so imported.

Mail and Wire Fraud Scheme

24.  In or about and between January 1996 and October
30, 2000, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ALEX
LUKOV, MARCO MINUTO, JOHN ROMEO, JOSEPH CASSESE, and BORIS
KERZHNER did knowingly and intentionally devise a scheme and
artifice to defraud New York State and to obtain money by means
of materially false and fraudulent pretenses, representations and
promises and, for the purpose of executing this scheme and

required to complete a "Diesel Motor Fuel and Motor Fuel
Transporter's Monthly Report" and to file this report with the
Tax Department.  This report called for transporters to provide
information regarding, among other items, the date of shipment,
manifest number, place of origin, name and registration number of
the distributor, the product type and the number of gallons
transported.

20.  The State of New York also required transporters
to maintain a "Uniform Manifest for Interstate Movements of
Automotive Fuel," Tax Department Form Number FT-960, for each
shipment of motor fuel imported into the State of New York.  This
document required the transporter to issue a manifest number for
each particular shipment and to identify the terminal from which
the fuel was drawn, the name and the Tax Department
identification number for the distributor, and the number of
gallons of each type of motor fuel loaded and unloaded.

21.  Tax on motor fuel imported into the State of New
York was due when the fuel was first imported into the state and
was required to be remitted to the Tax Department on the 20th day
of the month after the month in which the motor fuel was imported
into the State of New York.

New Jersey Excise Taxes

22.  The State of New Jersey also imposed state excise
taxes on gasoline obtained and delivered within New Jersey.  Such

10

artifice and attempting to do so, transmitted and caused to be transmitted by means of wire communication in interstate commerce signs, signals and sounds and placed and caused to be placed mail matter in authorized depositories for mail matter to be delivered by the United States Postal Service, according to the directions thereon, in violation of Title 18, United States Code, Sections 1341, 1343 and 2.

25. It was part of this scheme and artifice that the defendant ALEX LUKOV and others caused the Lukov Companies to fail to pay all applicable New York State taxes on gasoline imported into New York.

26. It was further part of this scheme and artifice that the Lukov Companies purchased gasoline stored in New Jersey terminals from licensed wholesalers and distributors and misrepresented to the terminals the destination of the gasoline being purchased as being the State of New Jersey.

27. It was further part of this scheme and artifice that the defendant JOSEPH CASSESE, through Whirled-Wide, sold gasoline stored in New Jersey terminals to the Lukov Companies knowing that that gasoline was being sold by LUKOV to retail filling stations in New York in violation of applicable New York State tax regulations.

28. It was further part of this scheme and artifice that the defendant ALEX LUKOV hired drivers to transport gasoline

from New Jersey terminals into New York for sale at retail
filling stations located in New York.

29.  It was further part of this scheme and artifice
that the defendant ALEX LUKOV caused drivers to indicate falsely
to the terminals that the destination of gasoline being acquired
at the terminals was the State of New Jersey, when, in fact, as
ALEX LUKOV knew and believed; the destination was the State of
New York.  As a result of this deception, the terminals generated
bills of lading and other documents indicating that the gasoline
was being delivered to retail filling stations in New Jersey
rather than New York.

30.  It was further part of this scheme and artifice
that the defendant ALEX LUKOV caused the Lukov Companies and
drivers employed by the Lukov Companies to maintain
documentation, including bills of lading, designed to mislead the
Tax Department and other law enforcement authorities into
believing that all applicable state taxes had been paid on the
gasoline being transported.

31.  It was further part of this scheme and artifice
that the defendant ALEX LUKOV arranged for the sale of gasoline
imported into New York from New Jersey to retail filling stations
located in New York at discount prices.

32.  It was further part of this scheme and artifice
that the Lukov Companies received substantial amounts of illegal

12.

cash income through the transportation and distribution of
"bootleg" gasoline and used that income, in part, to finance the
purchase of additional gasoline at New Jersey terminals.

33. It was further part of this scheme and artifice
that the defendant BORIS KERZHNER regularly collected the cash
income of this scheme and artifice from the retail filling
stations that purchased bootleg gasoline from the Lukov
Companies.

34. It was further part of this scheme and artifice
that the defendant ALEX LUKOV destroyed documents and caused the
destruction of documents revealing bootlegging by the Lukov
Companies in order to conceal the bootlegging activities of the
Lukov Organization from law enforcement.

35. It was part of this scheme and artifice that the
defendant JOHN ROMEO provided operating capital to the Lukov
Companies and received a substantial portion of the illegal
profits of the Lukov Companies.

36. It was further part of this scheme and artifice
that the defendant MARCO MINUTO supervised and protected the
Lukov Organization and resolved disputes related to the illegal
activities of the Organization. In return for such supervision
and protection, MINUTO received regular payments from the illegal
earnings generated by the criminal activity of the Lukov
Organization.

13

<u>The Use of the Mails and Interstate Wires in the Scheme</u>

37.  For the purpose of executing and attempting to execute this scheme and artifice, the defendants charged in this racketeering act, together with others, caused to be placed mail matter in authorized depositories for mail matter to be delivered by the United States Postal Service on or about the dates set forth below:

| RA | Date | From | To | Nature of Transmission |
|----|------|------|-----|------------------------|
| 1(a) | 6/6/96 | Panther | Citgo | Financial Statement of Gary Furman |
| 1(b) | 9/15/00 | Express I | Citgo | Carrier Card Agreements |

38.  For the purpose of executing and attempting to execute this scheme and artifice, the defendants charged in this racketeering act, together with others, caused the transmission by means of wire communication in interstate commerce signs, signals and sounds on or about the dates set forth below:

| RA | Date | From | To | Transmission |
|----|------|------|-----|--------------|
| 1(c) | 6/12/00 | Whirled-Wide Marathon Acct. (Queens, New York) | Rio Energy (Texas) | $128,462.27 Electronic Funds Transfer |
| 1(d) | 7/3/00 | Whirled-Wide Marathon Acct. (Queens, New York) | Rio Energy (Texas) | $144,400.46 Electronic Funds Transfer |
| 1(e) | 7/12/00 | Whirled-Wide Marathon Acct. (Queens, New York) | Rio Energy (Texas) | $137,822.24 Electronic Funds Transfer |

14

1(f) 10/22/00   ALEX LUKOV          MARCO MINUTO  Telephone Call
                (Brooklyn,          (New Jersey)
                New York)

1(g) 10/22/00   ALEX LUKOV          MARCO MINUTO  Telephone Call
                (Brooklyn,          (New Jersey)
                New York)                           · · ·

## RACKETEERING ACT TWO
(Mail Fraud - Citgo)

39.   In or about and between January 1996 and February

1997, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants ALEX

LUKOV, JOHN ROMEO and MARCO MINUTO, together with others, did

knowingly and intentionally devise a scheme and artifice to

defraud Citgo and to obtain money and property from Citgo by

means of materially false and fraudulent pretenses,

representations and promises and, for the purpose of executing

this scheme and artifice and attempting to do so, placed and

caused to be placed mail matter in authorized depositories for

mail matter to be delivered by the United States Postal Service,

according to the directions thereon, including the mailing

described in paragraph 44, in violation of Title 18, United

States Code, Sections 1341 and 2.

40.   It was part of this scheme and artifice that the

defendant ALEX LUKOV caused Panther to obtain over

$2,000,000 worth of gasoline and petroleum products from Citgo

that were not paid for by Panther.

PAGE  16

05/29/2001-08:08 5088-CRU 684837   Document 239    Entered on FLSD Docket 06/15/2001    Page 20 of 49
05-29-2001 05:30PM   FROM  IANNUZZIandIANNUZZI

15

41.  It was further part of this scheme and artifice
that the defendant ALEX LUKOV caused Panther to obtain a line of
credit with Citgo, thereby permitting Panther to purchase
gasoline and other petroleum products from Citgo without paying
for those products immediately.

42.  It was further part of this scheme and artifice
that, in order to establish this line of credit, in or about June
1996, the defendant ALEX LUKOV caused a personal financial
statement of Panther's President, who acted as personal guarantor
of this line of credit, to be mailed from Panther to Citgo, which
financial statement LUKOV knew falsely represented the personal
assets of Panther's President.

43.  It was further part of this scheme and artifice
that, in or about and between February 1996 and September 1996,
the defendant ALEX LUKOV caused to be submitted to Citgo
financial statements that falsely represented Panther's assets
and working capital.

44.  It was further part of this scheme and artifice
that, on or about February 13, 1997, at a time when Panther had a
balance of approximately $61,000.00 in its bank account, the
defendant ALEX LUKOV misrepresented to a Citgo credit manager
that Panther had sufficient funds in its bank account to cover an
Electronic Funds Transfer of $490,280.67 to Citgo, and on the

16

basis of this misrepresentation, obtained Citgo's authorization
for the delivery of 430,000 gallons of petroleum to Panther Oil.

45.   It was further part of this scheme and artifice
that, on or about February 14, 1997, the defendant ALEX LUKOV
misrepresented to a Citgo credit manager that a check for $70,000
would be mailed to Citgo that day and further misrepresented that
Panther would cover an Electronic Funds Transfer of $490,280.67
to Citgo.

46.   It was further part of this scheme and artifice
that, on or about February 18, 1997, the defendant ALEX LUKOV
misrepresented to a Citgo credit manager that a check for $70,000
had been mailed to Citgo on February 14, 1997, and that another
check for $70,000 would be mailed to Citgo by overnight courier
on February 18, 1997, and on the basis of these
misrepresentations, obtained Citgo's authorization for the
delivery of 167,400 gallons of petroleum to Panther.

47.   It was further part of this scheme and artifice
that the defendants ALEX LUKOV, JOHN ROMEO and MARCO MINUTO,
together with others, caused Panther to sell the petroleum
products obtained from Citgo and thereafter allocated the profits
among themselves and others.

RACKETEERING ACT THREE
(Money Laundering Conspiracy - AOB Medical Supply)

48.   In or about and between June 2000 and November
2000, both dates being approximate and inclusive, within the

PAGE 18

05/30/2000-07:05088-010 Document 239    Entered on FLSD Docket 06/13/2001    Page 22 of 49
05-29-2001 05:31PM    FROM IANNUZZIandIANNUZZI

17

Eastern District of New York and elsewhere, the defendants ALEX
LUKOV and BORIS KERZHNER, together with others, did knowingly and
intentionally conspire to conduct financial transactions, knowing
that the property involved in such financial transactions
represented the proceeds of some form of unlawful activity, and
which property did in fact involve the proceeds of specified
unlawful activity, to wit: mail fraud and wire fraud in violation
of Title 18, United States Code, Sections 1341 and 1343 as
described in Racketeering Act One, with the intent to promote the
carrying on of specified unlawful activity, to wit: mail fraud,
in violation of Title 18, United States Code, Section 1956(h).

49.    It was part of this conspiracy that, in or about
June 2000, the defendants ALEX LUKOV and BORIS KERZHNER
established AOB, a medical supply company with an office on
Rockaway Boulevard in Queens, New York.

50.    It was a further part of this conspiracy that the
defendant ALEX LUKOV invested in AOB proceeds of specified
unlawful activity to wit: mail fraud and wire fraud in violation
of Title 18, United States Code, Sections 1341 and 1343, to wit:
the fraudulent activity described in Racketeering Act One.

51.    It was a further part of this conspiracy that the
defendants established AOB, in part, for the purpose of
submitting fraudulent claims to insurance companies seeking

19

reimbursement for medical supplies allegedly provided by ACB to AOB patients and customers.

**RACKETEERING ACT FOUR**
(Extortion of John Doe #1)

52. The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act Four:

    A. Conspiracy to Extort

53. On or about and between August 1, 2000 and October 4, 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALEX LUKOV, MARCO MINUTO and JOSEPH CASSESE, together with others, knowingly and intentionally conspired to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that these defendants and others conspired to obtain property, to wit: money belonging to John Doe #1, whose identity is known to the grand jury, with the consent of John Doe #1, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951.

    B. Attempt to Extort

54. On or about and between August 1, 2000 and August 30, 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALEX LUKOV, MARCO MINUTO and JOSEPH CASSESE, together with others,

19

knowingly and intentionally attempted to obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, by extortion, in that the defendants and others
attempted to obtain property, to wit: money belonging to John Doe
#1, with the consent of John Doe #1, which consent was to be
induced through wrongful use of actual and threatened force,
violence and fear, in violation of Title 18, United States Code,
Sections 1951 and 2.

### RACKETEERING ACT FIVE
(Extortionate Extension of Credit: John Doe #2)

55.    On or about and between April 1, 1990 and January
1, 1995, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant JOHN
ROMEO, together with others, knowingly and intentionally made an
extortionate extension of credit to John Doe #2, whose identity
is known to the grand jury, in violation of Title 18, United
States Code, Sections 892 and 2.

(Title 18, United States Code, Sections 1962(c), 1963
and 3551 et seq.)

### COUNT TWO
(Racketeering Conspiracy)

56.    The allegations contained in paragraphs 1 through
10 are hereby realleged and incorporated as if fully set forth
herein.

20

57.   In or about and between April 1990 and November 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALEX LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex the Russian," and "Edward Gershovich," MARCO MINOTO, also known as "The Old Man" and "The Other Guy," JOHN ROMEO, JOSEPH CASSESE, also known as "Little Joe," and BORIS KERZHNER, also known as "Borya," together with others, being persons employed by and associated with the Lukov Organization, which enterprise engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conspired to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), in violation of Title 18, United States Code, Section 1962(c).

58.   The pattern of racketeering activity through which the above-named defendants agreed to conduct the affairs of the Lukov Organization consisted of the racketeering acts set forth in paragraphs 13 through 55 above as racketeering acts one through five of this Superseding Indictment, which are hereby realleged and incorporated as if fully set forth herein.  It was part of the racketeering conspiracy that the defendants agreed

that at least two acts of racketeering would be committed by a coconspirator in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seg.)

## COUNT THREE
(Mail and Wire Fraud Conspiracy - Bootleg Gasoline)

59. The allegations contained in paragraphs 1 through 10 and 13 through 38 are hereby realleged and incorporated as if fully set forth herein.

60. In or about and between January 1996 and October 30, 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALEK LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex the Russian," and "Edward Gershovich," MARCO MINUTO, also known as "The Old Man" and "The Other Guy," JOHN ROMEO, JOSEPH CASSESE, also known as "Little Joe," BORIS KERZHNER, also known as "Borya," and IRINA KERZHNER, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the State of New York and to obtain money from it by means of materially false and fraudulent pretenses, representations and promises and, for the purpose of executing the aforementioned scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate commerce signs, signals and sounds,

PAGE  23
Case 6:00-cr-06088-LJV   Document 239   Entered on FLSD Docket 06/13/2001   Page 27 of 49
05/30/2001  08:05  2016849437  INNOZZ ano IANNOZZI   FROM   INNOZZ ano IANNOZZI
05-29-2001 05:34PM

22

in violation of Title 18, United States Code, Section 1343, and
to place and to cause to be placed mail matter in authorized
depositories for mail matter to be delivered by the United States
Postal Service, according to the directions thereon, in violation
of Title 18, United States Code, Section 1341.

      61.    In furtherance of the conspiracy and to effect
the objects thereof, within the Eastern District of New York and
elsewhere, the above-named defendants and their coconspirators
committed and caused to be committed, among others, the
following:

## OVERT ACTS

      a.   On June 11, 2000, the defendant ALEX LUKOV had a
telephone conversation in which he negotiated to sell gasoline to
the operator of a retail filling station in New York.

      b.   On June 22, 2000, the defendant ALEX LUKOV had a
telephone conversation in which he negotiated to sell gasoline to
the operator of a retail filling station in New York.

      c.   On June 13, 2000, the defendant ALEX LUKOV had a
telephone conversation in which he negotiated to sell gasoline to
the operator of a retail filling station in New York.

      d.   On July 16, 2000, the defendant ALEX LUKOV had a
telephone conversation in which he negotiated to sell gasoline to
the operator of a retail filling station in New York.

e.    On August 13, 2000, the defendant ALEX LUKOV had
a telephone conversation in which he negotiated to sell gasoline
to the operator of a retail filling station in New York.

f.    On or about June 6, 1996, the defendant ALEX
LUKOV caused to be mailed to Citgo a personal financial statement
of Gary Furman.

g.    On or about September 15, 2000, the defendants
ALEX LUKOV and IRINA KERZHNER caused to be mailed to Citgo
Carrier Card Agreements.

(Title 18, United States Code, Sections 371 and 3551 et
seq.)

## COUNTS FOUR AND FIVE
### (Mail Fraud - Bootleg Gasoline)

62.    The allegations contained in paragraphs one
through ten and 13 through 38 are hereby realleged and
incorporated as if fully set forth herein.

63.    In or about and between January 1996 and October
30, 2000, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ALEX
LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex
Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex the Russian,"
and "Edward Gershovich," MARCO MINUTO, also known as "The Old
Man" and "The Other Guy," JOHN ROMEO, JOSEPH CASSESE, also known
as "Little Joe," BORIS KERZHNER, also known as "Borys," and IRINA
KERZHNER, together with others, did knowingly and intentionally

PAGE 25

05/30/2001 08:05 2016849637 TO LSD Docket 06/15/2001 Page 29 of 49
05-29-2001 05:35PM FROM (ANNuzzi-andIANNuzzi) Document 239 Entered on

26

devise a scheme and artifice to defraud the State of New York and
to obtain money from it by means of materially false and
fraudulent pretenses, representations and promises and, for the
purpose of executing the aforementioned scheme and artifice,
placed and caused to be placed the following mail matter in
authorized depositories for mail matter to be delivered by the
United States Postal Service, according to the directions thereon
on or about the dates indicated:

| Count | Date | From | To | Nature of Transmission |
|-------|------|------|-----|------------------------|
| 4 | 6/6/96 | Panther (Merrick, New York) | Citgo | Financial Statement of Gary Furman |
| 5 | 9/15/00 | Express I (Queens, New York) | Citgo | Carrier Card Agreements |

(Title 18, United States Code, Sections 1341, 2 and
3551 et seq.)

## COUNTS SIX THROUGH TEN
### (Wire Fraud - Bootleg Gasoline)

64. The allegations contained in paragraphs one
through ten and 13 through 38 are hereby realleged and
incorporated as if fully set forth herein.

65. In or about and between January 1996 and October
30, 2000, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ALEX
LUKOV, also known as "Oleg Lukov," "Oleg Lukovox," "Alex
Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex the Russian,"

25

and "Edward Gershovich," MARCO MINUTO, also known as "The Old
Man" and "The Other Guy," JOHN ROMEO, JOSEPH CASSESE, also known
as "Little Joe," BORIS KERZHNER, also known as "Borya," and IRINA
KERZHNER, together with others, did knowingly and intentionally
devise a scheme and artifice to defraud the State of New York and
to obtain money from it by means of materially false and
fraudulent pretenses, representations and promises and, for the
purpose of executing the aforementioned scheme and artifice,
transmitted and caused to be transmitted by means of wire
communication in interstate commerce the following signs, signals
and sounds on or about the dates indicated:

| Count | Date | From | To | Transmission |
|-------|------|------|-----|-------------|
| 6 | 6/12/00 | Whirled-Wide Marathon Acct. (Queens, New York) | Rio Energy (Texas) | $128,462.27 Electronic Funds Transfer |
| 7 | 7/3/00 | Whirled-Wide Marathon Acct. (Queens, New York) | Rio Energy (Texas) | $144,400.46 Electronic Funds Transfer |
| 8 | 7/12/00 | Whirled-Wide Marathon Acct. (Queens, New York) | Rio Energy (Texas) | $137,822.24 Electronic Funds Transfer |
| 9 | 9/22/00 | ALEX LUKOV (Brooklyn, New York) | MARCO MINUTO (New Jersey) | Telephone Call |
| 10 | 9/22/00 | ALEX LUKOV (Brooklyn, New York) | MARCO MINUTO (New Jersey) | Telephone Call |

26

(Title 18, United States Code, Sections 1343, 2 and
3551 et seq.)

### COUNT ELEVEN
(Mail Fraud Conspiracy - Citgo)

66.    The allegations contained in paragraphs one
through ten and 39 through 47 are hereby realleged and
incorporated as if fully set forth herein.

67.    In or about and between January 1996 and February
1997, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ALEX
LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex
Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex the Russian,"
and "Edward Gershovich," and JOHN ROMEO, together with others,
did knowingly and intentionally conspire to devise a scheme and
artifice to defraud Citgo and to obtain money and property of
Citgo by means of materially false and fraudulent pretenses,
representations and promises and, for the purpose of executing
this scheme and artifice, to place and cause to be placed mail
matter in authorized depositories for mail matter to be delivered
by the United States Postal Service, according to the directions
thereon, in violation of Title 18, United States Code, Sections
1341 and 2.

68.    In furtherance of the conspiracy and to effect
the objects thereof, within the Eastern District of New York and
elsewhere, the above-named defendants and their co-conspirators

PAGE 28
05/30/2001 00:05 6508820184907cument 239 Entered on FLSD Docket 05/43/2001 Page 32 of 49
'05-29-2001 05:36PM FROM IANNUZZIandIANNUZZI-

27

committed and caused to be committed, among others, the
following:

### OVERT ACTS

a.    On or about February 13, 1997, the defendant ALEX
LUKOV spoke by telephone with a Citgo credit manager.

b.    On or about February 14, 1997, the defendant ALEX
LUKOV spoke by telephone with a Citgo credit manager.

c.    On or about February 18, 1997, the defendant ALEX
LUKOV spoke by telephone with a Citgo credit manager.

(Title 18, United States Code, Sections 371 and 3551 et
seq.)

### COUNT TWELVE
(Mail Fraud - Citgo)

69.    The allegations contained in paragraphs 1 through
10 and 39 through 47 are hereby realleged and incorporated as if
fully set forth herein.

70.    In or about and between January 1996 and February
1997, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ALEX
LUKOV also known as "Oleg Lukov," "Oleg Lukovos," "Alex Lukovos,"
"Yakov Mogilevich," "Alex Romac," "Alex the Russian," and "Edward
Gershovich," and JOHN ROMEO, together with others, did knowingly
and intentionally devise a scheme and artifice to defraud Citgo
and to obtain money and property of Citgo by means of false and
fraudulent pretenses, representations and promises and, for the

28

purpose of executing this scheme and artifice and attempting to
do so, placed and caused to be placed mail matter in authorized
depositories for mail matter to be delivered by the United States
Postal Service, according to the directions, thereon, to wit: a
personal financial statement of Gary Furman dated June 6, 1996.

(Title 18, United States Code, Sections 1341, 2 and
3551 et seq.)

### COUNT THIRTEEN
(Money Laundering Conspiracy - Bootleg Gasoline)

71.   The allegations contained in paragraphs 1 through
10 and 13 through 38 are hereby realleged and incorporated as if
fully set forth herein.

72.   In or about and between January 1996 and November
2000, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ALEX
LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex
Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex the Russian,"
and "Edward Gershovich," MARCO MINUTO, also known as "The Old
Man" and "The Other Guy," JOHN ROMBO, JOSEPH CASSESE, also known
as "Little Joe," BORIS KERZHNER, also known as "Borya," and IRINA
KERZHNER, together with others, did knowingly and intentionally
conspire to conduct financial transactions, knowing that the
property involved in such financial transactions represented the
proceeds of some form of unlawful activity, and which property
did in fact involve the proceeds of specified unlawful activity,

to wit: mail fraud and wire fraud in violation of Title 18,
United States Code, Sections 1341 and 1343 as described in Counts
Four through Eleven with the intent to promote the carrying on of
said specified unlawful activity, in violation of Title 18,
United States Code, Section 1956(a)(1)(A)(i).

73. It was a part of this conspiracy that the
defendants arranged for payment for the sale of gasoline to
retail filling stations to be made to the Lukov Companies in cash
in order to avoid creating a documentary record of such
transactions.

74. It was a further part of this conspiracy that the
defendants arranged for the transfer of cash from the Lukov
Companies to Whirled-Wide, which money was used to purchase more
gasoline that was, in turn, transported into, and sold in, the
State of New York without payment of all applicable New York
State taxes.

(Title 18, United States Code, Sections 1956(h) and
3551 et seq.)

## COUNT FOURTEEN
### (Money Laundering Conspiracy-Concealment of Assets)

75. The allegations contained in paragraphs 1 through
47 are hereby realleged and incorporated as if fully set forth
herein.

76. In or about and between January 1996 and November
2000, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants ALEX
LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex
Lukovos," "Yakov Mogilevich," "Alex Romeo,""Alex the Russian,"
and "Edward Gershovich," MARCO MINUTO, also known as "The Old
Man" and "The Other Guy," and JOHN ROMEO, together with others,
did knowingly and intentionally conspire to conduct financial
transactions, knowing that the property involved in such
financial transactions represented the proceeds of some form of
unlawful activity, and which property did in fact involve the
proceeds of specified unlawful activity, to wit: mail fraud and
wire fraud in violation of Title 18, United States Code, Sections
1341 and 1343, as described in Racketeering Acts One and Two and
Counts Three through Twelve of this Superseding Indictment,
knowing that the transactions were designed in whole or in part
to conceal and disguise the nature, location, source, ownership
and control of such proceeds, in violation of Title 18, United
States Code, Section 1956(a)(1)(B)(i).

77.  It was further part of this conspiracy that the
defendants ALEX LUKOV, MARCO MINUTO and JOHN ROMEO, together with
others, received thousands of dollars in proceeds from the
fraudulent schemes described in Racketeering Acts One and Two and
Counts Three through Twelve of this Superseding Indictment, and
attempted to conceal, and did conceal, the nature, location,
source, ownership and control of such proceeds by, among other

31

things, concealing their roles as undisclosed partners in the Lukov Companies, receiving and distributing their illegal proceeds in cash in order to avoid creating a documentary record of such transactions, and acquiring properties for the benefit of themselves and others in the names of others.

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### COUNT FIFTEEN
(Money Laundering Conspiracy - AOB)

78.  The allegations contained in paragraphs 1 through 10 and 48 through 51 are hereby realleged and incorporated as if fully set forth herein.

79.  In or about and between June 2000 and November 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALEX LUKOV the defendants ALEX LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex Lukovos," "Yakov Mogilevich," "Alex Romeo,""Alex the Russian," and "Edward Gershovich," and BORIS KERZHNER, also known as "Borya," together with others, did knowingly and intentionally conspire to conduct financial transactions, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and which property did in fact involve the proceeds of specified unlawful activity, to wit: mail fraud and wire fraud in violation of Title 18, United States Code, Sections

32

1341 and 1343 as described in Racketeering Acts One and Two and
Counts Three through Eleven of this Superseding Indictment, with
the intent to promote the carrying on of specified unlawful
activity, to wit: mail fraud, in violation of Title 18, United
States Code, Section 1341, as described in paragraph 67, in
violation of Title 18, United States Code, Section
1956(a)(1)(A)(i).

(Title 18, United States Code, Sections 1956(h) and
3551 et seq.)

### COUNT SIXTEEN
### (Extortion Conspiracy)

80.   The allegations contained in paragraphs 1 through
10 and 13 through 38 are hereby realleged and incorporated as if
fully set forth herein..

81.   On or about and between August 1, 2000 and
November 1, 2000, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendants ALEX LUKOV, also known as "Oleg Lukov," "Oleg
Lukovos," "Alex Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex
the Russian," and "Edward Garshovich," MARCO MINUTO, also known
as "The Old Man" and "The Other Guy," JOSEPH CASSESE, also known
as "Little Joe," and GIOVANNI LOBRANO, also known as "Joseph,"
"Giovi," "Young Joe," and "John," together with others, knowingly
and intentionally conspired to obstruct, delay and affect
commerce, and the movement of articles and commodities in

33

commerce, by extortion, in that the defendants and their
coconspirators conspired to obtain property, to wit: money
belonging to John Doe #1, whose identity is known to the grand
jury, with the consent of John Doe #1, which consent was to be
induced through wrongful use of actual and threatened force,
violence and fear.

(Title 18, United States Code, Sections 1951 and 3551
et seq.)

## COUNT SEVENTEEN
### (Attempt to Extort)

82.    The allegations contained in paragraphs 1 through
10 and 13 through 38 are hereby realleged and incorporated as if
fully set forth herein.

83.    On or about and between August 1, 2000 and
November 1, 2000, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendants ALEX LUKOV, also known as "Oleg Lukov," "Oleg
Lukovos," "Alex Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex
the Russian," and "Edward Gershovich," MARCO MINUTO, also known
as "The Old Man" and "The Other Guy," JOSEPH CASSESE, also known
as "Little Joe," and GIOVANNI LUBRANO, also known as "Joseph,"
"Giovi," "Young Joe," and "John," together with others, knowingly
and intentionally attempted to obstruct, delay and affect
commerce, and the movement of articles and commodities in
commerce, by extortion, in that the defendants and others

34

attempted to obtain property, to wit: money belonging to John Doe
#1, whose identity is known to the grand jury, with the consent
of John Doe #1, which consent was to be induced through wrongful
use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951, 2 and
3551 et seq.)

## COUNT EIGHTEEN
### (Assault in Aid of Racketeering)

84.   The allegations contained in paragraphs 1 through
10 and 13 through 38 are hereby realleged and incorporated as if
fully set forth herein.

85.   On or about August 13, 2000, the defendant ALEX
LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex
Lukovos," "Yakov Nogilevich," "Alex Romeo," "Alex the Russian,"
and "Edward Gershovich," for the purpose of maintaining and
increasing position within the Lukov Organization, an enterprise
engaged in racketeering activity, did knowingly and intentionally
assault John Doe #3, whose identity is known to the Grand Jury,
which assault resulted in serious bodily injury to John Doe # 3,
in violation of Section 120.05(1) of the New York Penal Law.

(Title 18, United States Code, Sections 1959(a)(3) and
3551 et seq.)

35

## COUNT NINETEEN
(Perjury)

86. The allegations contained in paragraphs 1 through 10 and 39 through 47 are hereby realleged and incorporated as if fully set forth herein.

87. On or about March 19, 1997, within the Eastern District of New York, the defendant ALEX LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex the Russian," and "Edward Gershovich," having taken an oath before a competent tribunal and officer that he would testify truthfully in response to deposition questions by attorneys representing Citgo in a case in which a law of the United States authorized such an oath to be administered, did knowingly, willfully and contrary to such oath make material declarations in his testimony, to wit: representations that Panther did not maintain a business ledger, as set forth below in the underscored portions of the deposition transcript pages, which he did not then and there believe to be true:

March 19, 1997 Deposition Transcript, page 45:

Q: There was no separate ledger?

A: No

Q: There were only the business records themselves, the original records?

A: Yes

March 19, 1997 Deposition Transcript, page 52:

36

Q: He didn't keep paying the balance. He kept paying part of the balance?

A: That is why I said there is a remaining balance on him.

Q: Where was that reported?

A: Whatever he holds, I have it. I know the number. I have the amount.

Q: Where is that?

A: I have it on a small piece of paper. It says the amount and that is it.

(Title 18, United States Code, Sections 1621(1) and 3551 et seq.)

## MONEY LAUNDERING FORFEITURE ALLEGATION

88. The allegations contained in Counts Thirteen through Fifteen are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982.

89. Pursuant to Title 18, United States Code, Section 982(a)(1), upon the conviction of any of the offenses set forth in Counts Thirteen through Fifteen of this Superseding Indictment, the defendants ALEX LUKOV, also known as "Oleg Lukov," "Oleg Lukovos," "Alex Lukovos," "Yakov Mogilevich," "Alex Romeo," "Alex the Russian," and "Edward Gershovich," MARCO MINUTO, also known as "The Old Man" and "The Other Guy," JOHN ROMEO. JOSEPH CASSESE, also known as "Little Joe," BORIS

KERZHNER, also known as "Borya," and IRINA KERZHNER shall forfeit to the United States all right, title and interest in any and all property, real or personal, involved in such offenses, or traceable to such property, which amounts to the sum of about $1,500,000.00.  Such forfeitable property includes, but is not limited to:

(a) all funds held in Lantern Investments, formerly known as Vision Securities, account number 537-20540 and all proceeds traceable thereto;

(b) all funds held in Merrill Lynch account number 741-10R30 and all proceeds traceable thereto;

(c) the real property located at 10185 Collins Avenue, Unit 814, Bal Harbour, Florida, described in the land records of Dade County, Florida as recorded in the Official Records Book, 12490, Page 2354 of the Public Records of Dade County, Florida, Folio Number, 12-2226-029-1720;

(d) the real property located at 65 Nearing Road, Lake Huntington, New York, described in the land records of Sullivan County, New York as Section 10, Block 2, Lots 10.3 and 19.2;

(e) the real property located at 839 Cliffside Avenue, North Woodmere, New York, described in the land records of Nassau County, New York as Section 39, Block 598, Lot 9;

38

(f) the real property located at 18 Willow Hill, Upper Saddle River, New Jersey, described in the land records of Bergen County, New Jersey, as Block 1204, Lot 1.02;

(g) a red 1993 Cadillac, VIN 1G6CD53BXP4219260, New York License Plate No. CB144G, registered to Whirled-Wide; and

(h) the vessel known as the "Marlin", Vessel Registration number 678830.

90. Any of the defendants named in Count Thirteen who are convicted of that Count shall be jointly and severally liable for forfeiture of all property involved in the offense or traceable thereto. Such property is valued at approximately $1,500,000.00.

91. Any of the defendants named in Count Fourteen who are convicted of that Count shall be jointly and severally liable for forfeiture of all property involved in the offense or traceable thereto. Such property is valued at approximately $1,500,000.00.

92. Any of the defendants named in Count Fifteen who are convicted of that Count shall be jointly and severally liable for all property involved in the offense or traceable thereto. Such property is valued at approximately $1,500,000.00.

93. If, as a result of any act or omission of any of the defendants named in Counts Thirteen through Fifteen, any of

39

the property forfeitable pursuant to Title 18, United States
Code, Section 982, or any portion thereof:

    (a)   cannot be located upon the exercise of due
          diligence;

    (b)   has been transferred or sold to, or deposited
          with, a third party;

    (c)   has been placed beyond the jurisdiction of the
          Court;

    (d)   has been substantially diminished in value; or

    (e)   has been commingled with other property which
          cannot be divided without difficulty;

the defendants ALEX LUKOV, MARCO NINUTO, JOHN ROMEO, JOSEPH
CASSESE, BORIS KERZHNER and IRINA KERZHNER shall forfeit
substitute property, up to the value of the property described in
subparagraphs 93(a) through 93(e) above, pursuant to Title 21,
United States Code, Section 853(p), as incorporated by Title 18,
United States Code, Section 982(b), including, but not limited
to, the following:

    a.   all right, title and interest in the lot or parcel
of land, together with its buildings, appurtenances,
improvements, fixtures, attachments and easements, located at 11
Warton Place, Garden City, New York, described in the land
records of Nassau County, New York as Section 34, Block 576, Lot
11; and

05/30/2001 00:05 00608 00108 4943 Document 239   Entered on FLSD Docket 06/15/2001   Page 45 of 49
05-29-2001 05:44PM   FROM IANNUZZI and IANNUZZI

40

b.    all funds held in Merrill Lynch account numbers
831-36125, 831-36126, 831-35866, and 831-36118, and all proceeds
traceable thereto.

(Title 18, United States Code, Section 982; Title 21,
United States Code, Section 853(p))

### RICO FORFEITURE ALLEGATION

94.    The allegations contained in Counts One and Two
are hereby realleged and incorporated by reference for the
purpose of alleging forfeitures pursuant to the provisions of
Title 18, United States Code, Section 1963.

95.    As a result of the offenses set forth in Counts
One and Two, the defendants ALEX LUKOV, also known as "Oleg
Lukov," "Oleg Lukovos," "Alex Lukovos," "Yakov Mogilevich," "Alex
Romeo," "Alex the Russian," and "Edward Gershovich," MARCO
MINUTO, also known as "The Old Man" and "The Other Guy," JOHN
ROMEO, JOSEPH CASSESE, also known as "Little Joe," and BORIS
KERZHNER, also known as "Borya":

a.    have interests which they acquired or maintained
in violation of Title 18, United States Code, Section 1962, which
interests are subject to forfeiture to the United States of
America pursuant to Title 18, United States Code, Sections
1963(a)(1);

b.    have an interest in, security of, claim against or
property or contractual right affording them a source of

05-29-2001 05:12PM          718 254 6478

41

influence over the enterprise said defendants have established, operated, controlled, conducted and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(2); and

c.  have property constituting or derived from proceeds which they obtained directly or indirectly from racketeering activity in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(3).

98.  The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1)-1963(a)(3), include but are not limited to at least $1,300,000.00, which includes, but is not limited to, the following:

a.  All right, title and interest of any defendant in all funds held in Lantern Investments, formerly known as Vision Securities, account number 557-20540, and all proceeds traceable thereto;

b.  All right, title and interest of any defendant in all funds held in Merrill Lynch account number 741-10R30, and all proceeds traceable thereto;

c.  All right, title and interest of any defendant in the real property located at 10185 Collins Avenue, Unit 814, Bal

42

Harbour, Florida, described in the land records of Dade County,
Florida as recorded in the Official Records Book, 12490, Page
2354 of the Public Records of Dade County, Florida, Folio Number,
12-2226-029-1720;

      d.   All right, title and interest of any defendant in
the real property located at 65 Nearing Road, Lake Huntington,
New York described in the land records of Sullivan County, New
York as Section 10, Block 2, Lots 10.3 and 19.2;

      e.   All right, title and interest of any defendant in
the real property located at 839 Cliffside Avenue, North
Woodmere, New York, described in the land records of Nassau
County, New York as Section 39, Block 598, Lot 9;

      f.   All right, title and interest of any defendant in
the real property located at 18 Willow Hill, Upper Saddle River,
New Jersey, described in the land records of Bergen County, New
Jersey as Block 1204, Lot 1.02;

      g.   All right, title and interest of any defendants in
any and all motor vehicles, including, but not limited to
all right, title and interest of any defendant in a red 1993
Cadillac, VIN 1G6CD53BXP4219260, New York License Plate No.
C8146G, registered to Whirled-Wide; and

      h.   All right, title and interest of any defendant in
the vessel known as the "Marlin", Vessel Registration number
578830.

97. Any of the defendants named in Count One who are convicted of that Count shall be jointly and severally liable for the forfeiture obligations set forth in paragraphs 94 through 96. The property interests subject to forfeiture amount to approximately $1,500,000.00.

98. Any of the defendants named in Count Two who are convicted of that Count shall be jointly and severally liable for the forfeiture obligations set forth in paragraphs 94 through 96. The property interests subject to forfeiture amount to approximately $ 1,500,000.00.

99. If, as a result of any act or omission of any of the defendants named in Counts One and Two, any of the property forfeitable pursuant to Title 18, United States Code, Section 1963(a), or any portion thereof:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

the defendants ALEX LOKOV, MARCO MINUTO, JOHN ROMEO, JOSEPH CASSESE and BORIS KERZHNER shall forfeit substitute property, up to the value of the property described in subparagraphs 99(a)

44

through 99(w) above, pursuant to Title 18, United States Code,
Section 1963(m), including, but not limited to, the following:

    a.   all right, title and interest in the lot or parcel
of land, together with its buildings, appurtenances,
improvements, fixtures, attachments and easements, located at 11
Warton Place, Garden City, New York, described in the land
records of Nassau County, New York as Section 34, Block 576, Lot
11; and

    b.   all funds held in Merrill Lynch account numbers
831-36125, 831-36126, 831-35866, and 831-36118, and all proceeds
traceable thereto.

    (Title 18, United States Code, Section 1963)


                    A TRUE BILL


                    FOREPERSON


LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.131