UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6088-CR-UNGARO-BENAGES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARCO MINUTO, et al.,

    Defendant.
_____/

### GOVERNMENT'S RESPONSE TO DEFENDANT'S DISCOVERY MOTIONS

Comes now the United States and hereby files its Response to the following discovery motions filed by the defendant: 1) Defendant Marco Minuto's Specific Brady Request RE: Cooperating Witnesses; 2) Defendant Marco Minuto's Motion to Compel Inspection of Personnel Files of all Testifying Agents; 3) Defendant Minuto's Motion for Production of Impeachment and "Bad Acts" Pertaining to all Cooperating Witnesses, Including David Alwais; 4) Marco Minuto's Motion for Production of Pre-Sentence Investigation Reports of Cooperating Witnesses; 5) Marco Minuto's Motion for a List Of Government Witnesses; 6) Marco Minuto's Motion to Interview all Government Witnesses; 7) Marco Minuto's Specific Brady Request for Debriefing or Proffer Notes, Reports and Communications; 8) Marco Minuto's Motion to Unseal Documents Pertaining to Cooperating Government Witnesses. For the reasons set forth in this Response, the Government opposes the

information sought in these motions except to the extent indicated herein.

A. **Introduction**

The defendant has filed numerous motions seeking to compel the United States to produce a multitude of internal government documents and memoranda. Defendant's motions, however, do not outline the information that the United States has already supplied pursuant to its constitutional obligations. Consequently, the defendant has not articulated why the information given by the government fails to satisfy the due process clause of the constitution.

Defendant's motions are generally not factually specific to this case, but rather look "more like a set of written interrogatories in a civil case than a motion for specific Brady information...." United States v. Molinaro, 683 F. Supp. 205, 210 (E.D. Wis. 1988), aff'd., 877 F 2d. 1341 (7th Cir. 1989) (denying Brady motion without in camera review).

The United States will first briefly review the information it has supplied to the defendant pursuant to its constitutional obligations. Thereafter, the merits of the Defendant's Brady motions will be discussed in more detail. However, given the interrogatory like nature of the defendant's motions, the United

2

States in this response will not address each and every document production request set forth in defendant's Brady motion.[1]

B.  **Exculpatory and Impeachment Information Known to the United States**

In accordance with the constitutional principles enunciated in <u>Brady</u> and its progeny, the United States has supplied the defendant with information concerning the cooperating witnesses that will be testifying at trial. Specifically, the United States has informed defense counsel that the following persons will be testifying in accordance with their plea agreements which outline the nature and extent of any representations made the government concerning the possibility of a sentence reduction: David Alwais, Marcello Grasso and Alex Torrente. The government informed defense counsel that it filed a motion to reduce the sentence of the witness David Alwais and that this motion was granted. Also, the murder conspiracy portion of the RICO indictment was eliminated from the Information to which David Alwais ultimately plead guilty.

In addition, the United States will supply any and all information concerning payments to any witness or any family member as well as the case name and number in which any cooperating witness has testified. The United States is aware that Alwais was paid approximately $48,610 when he was acting in

---

[1] Should the Court find additional briefing on any issue helpful, the United States will, of course, promptly respond.

3

an undercover capacity. Alwais has also testified in <u>United States v. Kaplan, et al.</u>, Case No. 1:99-CR-609, which is currently being tried in the United States District Court in Atlanta. Furthermore, the United States will supply any information in its possession concerning any drug usage of any government witness during the period of time about which the witness will testify.

The United States is fully aware of its obligations under the constitution and the standing discovery order of this Court. We will again review the files and produce all information falling within the scope of <u>Brady</u> and its progeny. However, we note that this is an organized crime prosecution involving allegations of violence. Consequently, the United States will not in any sense agree to an "open file" discovery procedure.

### C. **<u>Brady</u> Does Not Require Open File Discovery**

It is well established that defendants have no general constitutional right to discovery. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 52 (1987); <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977). The decisions in <u>Brady</u> and its progeny do not create a right to discovery, but rather are based on the sound constitutional principle that the government should not be permitted to convict a person through the suppression of evidence, e.g., secret deals with witnesses or evidence

4

indicating that another person might have committed the crime. <u>United States v. Bagley</u> 473 U.S. 667, 675 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976). See also <u>United States v. Beasley</u>, 576 F.2d 626, 630 (5th Cir. 1978), <u>cert denied</u>, 440 U.S. 947 (1979)(Brady is "a rule of fairness and minimum prosecutorial obligations).

The Court has repeatedly emphasized that the <u>Brady</u> rule doses not require the prosecution to deliver its entire file to the defense. <u>Kyles v. Whitley</u>, 115 S.Ct. 1555, 1567 (1995); <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 59 (1987); <u>United States v. Bagley</u>, 473 U.S. 667, 675 (1985); <u>United States v. Agurs</u>, 427 U.S. 97, 109 (1976).

The defendant's <u>Brady</u> motions in this case are without merit because they are a <u>de facto</u> request for the government's entire file.

    D.    **The Government Should not Be Required to Produce A Witness List or Produce its Witnesses for a Pre-Trial Interviews**

It is well settled that, except in a capital case, a defendant is not entitled to a list of the government's witnesses. <u>United States v. Colson</u>, 662 F,2d 1389, 1391 (11th Cir. 1981)(upholding the district court's decision not to order the production of a witness list). The Congress made a deliberate decision not to require the government to disclose the identities of its witnesses prior to trial. In 1975 a House-

5

Senate Conference Committee considered the issue of witness disclosure and eliminated any mention of witness lists in the discovery rules based on a fear that requiring disclosure of such lists would discourage witnesses from testifying or result in the influencing of their testimony. H.R. Conf. Rep. No. 247. 94th Cong., 1st Sess. 13-14 (1975). In fact, as noted below, one of the defendants is already attempting to intimidate a government witness. Consequently, the United States opposes the production of a witness list prior to trial.

As previously observed, this is a RICO prosecution involving allegations of violence. The victims in this case are reluctant to testify and fear the defendants. In fact, the defendant Mariani, who has conducted beatings on behalf of the defendant Minuto, is engaged in acts of witness intimidation from inside prison. In a letter to a potential witness Mariani stated that he "saw Big Bobby and he said to say hello to you. He is in the building arrested on drug charges with three other friends of his. He may go out on bond soon." Later in the letter, following the reference to "Big Bobby" getting out of jail, Mariani instructed the witness as to what he should recall concerning the charged beating of the witness--specifically that the beating did not occur. (Attachment A).

Consequently, the United States opposes the production of any witness list prior to trial. For the same reasons, the

6

Government opposes the Defendant's Motion for an Interview of the Government's Witnesses.

E.  **Prior Bad Acts Of a Government Witness Not Resulting in a Conviction are Generally not Subject to Brady Disclosure**

The due process clause of the constitution requires the government to disclose only information that is material to guilt or to punishment. Evidence is considered material only if the failure to present such evidence at trial would substantially undermine confidence in the fairness of the trial. Kyles, 115 S.Ct. at 1556; Bagley 473 U.S. at 678. Moreover, the Court has specifically ruled that "the mere possibility that an item of undisclosed evidence might have helped the defense...does not establish 'materiality' in the constitutional sense." United v. Agurs, 427 U.S. at 109-110.

The Court in Wood v. Bartholomew, 516 U.S. 1, 5-6 (1995), recently made this point abundantly clear. The Court held that the failure of the state of Washington to disclose to the defense that a government witness had failed a polygraph examination was not a Brady violation because the results of the polygraph examination were inadmissible in the state of Washington. The Court ruled that there was no Brady violation precisely because the complained of evidence was not admissible at the trial of the defendant and consequently not material evidence within the ambit of the Brady rule. Id.

7

Similarly, the Eleventh Circuit in <u>Mills v. Singletary</u>, 63 F.3d 999, 1015 (11th Cir. 1995), <u>cert denied</u>, 517 U.S. 214 (1996), held that the <u>Brady</u> rule was not violated when the government failed to disclose to the defense that a government witness had admitted that he had stolen a gun in the past with the intent to kill someone. The Court found that there was no <u>Brady</u> violation because this information was of dubious admissibility to impeach the government witness and was not directly exculpatory.

Consequently, prior bad acts of a witness that do not result in an arrest or conviction do not fall within the <u>Brady</u> rule-- unless, of course, they directly relate to truthfulness. General bad act evidence is inadmissible to impeach a witness. Consequently such evidence is not material within the meaning of <u>Brady</u> and its progeny. <u>Delap v. Dugger</u>, 890 F.2d 285, 299 (11th Cir. 1989), <u>cert denied</u>, 496 U.S. 929 (1990) (holding that undisclosed evidence is not material when its admissibility at trail is uncertain). <u>See</u>, <u>Fed. R. Evid</u>. 608 (questions concerning specific evidence of misconduct may only be posed to a witness if probative of truthfulness).

The defendant's <u>Brady</u> motion calls upon the government to produce any and all bad act evidence concerning the government's witnesses. Such evidence is not material within the scope of <u>Brady</u> and consequently any such evidence need not be disclosed--

8

unless it consists of a direct false statement. Indeed, even evidence of prior general drug usage need not be disclosed--unless it relates to drug usage at the time the witness was observing a particular act. See United States v. Valencia, 925 F.2d 506, 513 (1st Cir. 1990). Defendant's broadly cast Brady motion is without legal merit.

F.  **Brady Applies Only to the Prosecutor and Investigative Agencies Over Whom the Prosecutor has Authority**

It is well settled that the Brady rule requires the prosecution to produce only that evidence which is in its constructive possession. United States v. Agurs, 427 U.S. at 110. The United States is not required to produce Brady material that is possessed by an agency over which the prosecutor does not have authority, e.g., agencies not involved in the investigation. United States v. Sepulveda, 15 F.3d 1161, 1178-79 (1st. Cir. 1993), (Brady does not apply to material in the possession of state law enforcement); United States v. Veksler, 62 F.3d 544, 550 (3d Cir. 1995), (Brady did not apply to transcripts of state grand jury); United States v. Capers, 61 F.3d 1100, 1103-04 (4th Cir. 1995), (no duty to disclose diary kept by confidential informant); United States v. Lochmondy, 890 F.2d 817, 823-24 (6th Cir. 1989)(prosecution not obligated to disclose tax returns that are not in its possession); United States v. Skorniak 59 F.3d 750, 755-56 (8th Cir. 1995)(prosecution did not have obligation to subpoena psychiatric records).

G. **Disclosure of Witness Statements Prior to Trial Is Not Required**

The defense asserts that the Government is required to disclose prior statements and proffer notes of witness interviews before trial. It is well settled that such disclosure is not required until after the witness has testified at trial.

The courts have repeatedly held that where evidence falls within both Brady and Jencks, e.g., prior inconsistent statements, the Jencks Act controls the timing of the disclosure. Consequently, the government is not required to disclose witness statements until after direct examination of the witness even if some aspects of the statements also fall within the scope of Brady. United States v. Martino, 648 F.2d 367, 384 (5th Cir. 1981), cert. denied, 456 U.S. 949 (1982) ("when alleged Brady material is contained in Jencks Act material, disclosure is generally timely if the government complies with the Jencks Act"); United States v. Scott, 524 F.2d 465, 467-68 (5th Cir. 1975)("This Court and others have recognized that the rule announced in Brady is not a pre-trial remedy and was not intended to override the mandate of the Jencks Act"); United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988)( Government appeal from district court order requiring Brady disclosure prior to the time for Jencks Act production. The Sixth Circuit reversed the district court and held that" "[i]f impeachment evidence is

10

within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence")

Moreover, the United States is not required to produce interview notes and summaries of interviews because such items are not statements of a witness and such production is not required. It is well settled that such reports do <u>not</u> constitute witness statements under 18 U.S.C. § 3500 or Fed. R. Crim. P. 26.2. Because these reports are not the statement of the witness their production is disfavored because they "would threaten the witness with impeachment on the basis of statements that they did not make." <u>United States v. Judon</u>, 581 F.2d 553, 555 (5th Cir. 1977). Indeed, in <u>United States Martinez</u>, 87 F.3d 731 (5th Cir. 1996), the district court ordered the government to produce an agents report of what a witness had told the agent. The government resisted production and perfected a pre-trial appeal of the court's decision. 87 F.3d at 734. The Court reversed and reaffirmed its holding in <u>Judon</u> that reports of interviews by agents do not constitute Jencks Act material. Thus the holding in <u>Judon</u> remains valid and the United States is not obligated to disclose agent summary reports of witness interviews. <u>United States v. Martinez</u> 87 F.3d at 739.

The defendant's request for the production of all witness statements under the rubric of <u>Brady</u> is thinly disguised attempt

to circumvent the Jencks's Act. The defendant's motion is without merit and should be denied.

H. **Disclosure of Pre-Sentence Reports**

The defendant seeks the disclosure of the Pre-sentence Investigation Reports of potential Government witnesses. Such reports do not constitute prior statements of the witness. Further, the reports contain personal information concerning the witness that is not subject to disclosure.

Pre-sentence reports are confidential documents prepared for the setencing court, United States v. Martinello, 556 F.2d 125 (5th Cir. 1977). Requiring disclosure of a PSI is contrary to the public interest as it may adversely affect the sentencing court's ability to obtain data on a confidential basis. Id. Therefore, disclosure of a pre-sentence report to third parties should not be authorized in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice. United States v. Charmer Industries, Inc., 711 F.2d 1164, 1175 (2nd Cir. 1983). In any event, a court order is required. Id. at 1176.

Where the defendant believes that a pre-sentence report of a government witness contains impeachment material, he should request that the trial court request an in camera inspection of the report. If the examination reveals any impeachment material, the judge should reveal to the defendant only those portions of

12

the report which contain impeaching information. <u>United States v. Anderson</u>, 724 F.2d 596, 598 (7th Cir. 1984). The United States has no objection to the Court directing the Probation Office to produce the PSI's for David Alwais, Marcello Grasso and Alex Torente for <u>in camera</u> review. However, it is the Government's position that these documents do not contain <u>Brady</u> material.

I. **Disclosure of Personnel Information of Government Employees**

The defendant seeks disclosure of the personnel files of government employees who are potential Government witnesses. The defendant has provided no support for this contention that the personnel files should be disclosed because they might contain impeaching information. Therefore, the defendant provides no basis for disclosure of the requested personnel files or for their production for inspection by the court. <u>United States v. Quinn</u>, 123 F.3d 1415 (11th Cr. 1997). When a defendant fails to demonstrate that the contents of a government employee's personnel file contains material evidence, the prosecution should not be required to file. <u>See</u> e.g., <u>United States v. Pitt</u>, 717 F.2d 1334 (11th Cir. 1983).

The defendant wants to engage in a "fishing expedition" into the personnel files of Government witnesses. Mere speculation that a government file might contain <u>Brady</u> material is not

13

sufficient to require an in camera inspection. United States v. Andrus, 775 F.2d 825 (7th Cir. 1985).

J. **Motion to Unseal Various Documents**

The United States opposes the defendant's general request to unseal any court filing related to a cooperating witness. In accordance with its Brady obligations the United States will supply any relevant information to the defense.

K. **In Camera Inspection by the Court of Possible Brady Material is not Automatically Required**

Although courts will frequently examine evidence in camera to determine whether it falls within the scope of Brady and its progeny, such examination is not mandated simply by a Defendant's Brady request. There must be some plausible showing that the material sought would contain exculpatory information before an in camera inspection of the material is required. United States v. Quinn, 123 F.3d 1415, 1422(11th Cir. 1997) (mere speculation that a government file may contain Brady material is not sufficient to require an in camera inspection); Love v. Johnson, 57 F.3d 1305, 1314 (4th Cir. 1995)(in camera inspection requires a plausible showing that Brady material exists); United States v. Navarro, 737 F.2d 625, 632 (7th Cir.), cert denied, 469 U.S. 1020 (1984)(insufficient showing for in camera inspection of Immigration and Naturalization Service (INS) file).

The defendant's Brady motion should be denied without an in camera inspection of the requested documents. The motion does not

14

show a plausible basis for concluding that the information requested contains exculpatory material beyond that already supplied by the government. Consequently, the defendant's <u>Brady</u> motion should be denied by the Court without conducting any <u>in camera</u> inspection of the government's files.

L. **Conclusion**

As previously observed, The defendant's discovery motions are similar to the motion before the Court in <u>United States v. Molinaro</u>, <u>supra</u>, in that it is "more like a set of written interrogatories in a civil case than a motion for specific <u>Brady</u> materials..." 683 F. Supp. at 209. Consequently, the motion should be denied. The government has satisfied its constitutional responsibilities in this case and the defendant's motion requests a wide variety of material which does not fall within the <u>Brady</u> rule. Finally, the United States is aware of its continuing responsibility to disclose information under <u>Brady</u> and its progeny.

          Respectfully submitted,

          GUY A. LEWIS
          UNITED STATES ATTORNEY

By: _____
     MICHAEL J. DITTOE
     ASSISTANT UNITED STATES ATTORNEY
     Court ID #A5500209
     500 E. Broward Blvd., 7th Floor
     Fort Lauderdale, FL 33394
     Telephone: (954) 356-7255
     Fax: (954) 356-7230

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed, this 5TH day of July, 2001, to:

Howard M. Srebnick, Esq.
Black, Srebnick & Kornspan, P.A.
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
Counsel for Marco Minuto

Bruce A. Zimet, Esq.
One Financial Plaza
Suite 2612
Fort Lauderdale, Florida 33394
Counsel for Nicolo Mariani

William J. Hunt, Esq.
William J. Hunt & Associates
155 Polifly Road
Suite 200
Hackensack, New Jersey 07601
Counsel for Joseph Minuto

Kerry A. Lawrence, Esq.
Briccetti, Calhoun & Lawrence, LLP
81 Main Street
Suite 450
White Plains, New York 10601
Counsel for Chris Greco

MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY

16

NICK MARIANI
10268-018
FEDERAL DETENTION CENTER
P.O. Box 019120
Miami, Florida 33101

February 25, 2001

Dear

    I am just writing to let you know that all is going well so far with my case. I hope all is well with you also. Yesterday I saw Big Bobby and he said to say hello to you. He is here in the building arrested on drug charges with three other friends of his. he may go out on bond soon.

    Marco is here also. They brought him in last week from New York. He wants to plead guilty also and put this behind him. The Government is giving him a hard time, trying to give him alot of time.

    Anson had a terrible tragedy. He went to the hospital for a back operation and the hospital gave him a bad dose of anesthesia that he may have been alergic to. He is now partially paralyzed. I understand he is in a wheel chair. The Prosecutor says he will not be called as a witness if and when this case ever goes to trial because of [his] medical condition.

    Because of all these strange turn of events, the outcome of this case may ultimately rest on your statement. The letter you wrote my Judge on my behalf was fine, and the interview you gave Ron Cacciatore was excellent. My version of the story is the same as yours; I came to your office with Marco to discuss a debt Anson owed and a heated arguement erupted being that you did not owe the money. Pushing ensued between you and Marco when you asked us to leave, and I interveined to break it up by pushing you two apart. We refused to leave untill you called Anson, which you did. You stated there were no other acts of violence and so did I.

ATTACHMENT A

They want Marco to plea guilty to Extortion with violence, the Government is playing hardball. His lawyer wants to send Ron Cacciatore over to see you one more time, only to clear up a few issues. Be expecting Ron this week sometime.

I want to apologize again for all the inconvenience this may have caused you. I appreciate all you have done untill now. I think the worst is behind us and this should be comming to a close soon.

Take care, be well.

Sincerely,

Nick Mariani