

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-CR-6088-UNGARO-BENAGES

UNITED STATES OF AMERICA,          :

   Plaintiff,                      :

                                       :

v.                                 :

MARCO MINUTO,                      :

   Defendant.                      :

. . . . . . . . . . . . . . . . . . . . . . . . . . :

## MARCO MINUTO'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPPRESS FRUITS OF WIRETAPS AND REQUEST FOR AN EVIDENTIARY HEARING

     David Alwais is a cooperating government witness.  He has been cooperating with the government since the fall of 1998.  See Sentencing Transcript of David Alwais, United States v. David Alwais, Case No. 96-6205-CR-NCR (So. Distr. Fla. October 29, 1999), at 4 (attached as Exhibit A).[1]  In fact, Mr. Alwais was working undercover with the FBI during the investigation giving rise to this case.  As part of his work in this case, David Alwais agreed to wear a body wire and record conversations he had with defendants Marco Minuto and Nicolo Mariani.  Alwais is expected to be one of the government's main witnesses at trial.  FBI Agents from South Florida raved "unequivocally" that Mr. Alwais "has been one of the most credible sources of cooperation" with whom they have dealt. Id. at 7.  Though Mr. Alwais was facing a sentence of 63 to 78 months, FBI Special Agent John Simmons requested that the Court sentence Mr. Alwais to probation:  "My dealings

---

    [1]    Mr. Minuto only recently received Alwais's sentencing transcript; thus, he is addressing the issue of Alwais's cooperation at this time.

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD., SUITE 1300, MIAMI, FL 33131• (305) 371-6421

as an FBI agent, and I have been one for 30 years, have been that *Mr. Alwais is the perfect cooperating witness. . . .* Our recommendation, if the court would so honor it, would be to *give him probation. He has been just fantastic.*" Id. at 9 (emphasis added).

In support of the government's request for this generously lenient sentence, AUSA Paul Schwartz proffered the extent of Alwais's cooperation. According to the government, Alwais made "numerous consensual recordings regarding a significant Gambino Mafia investigation." Id. at 4. Mr. Alwais "worked with agents of the FBI and also gave information regarding Luchese and Colombo Mafia targets." Id. Alwais's cooperation included consensual recordings and historical information "regarding counterfeit check violations, extortion and credit card transactions, false identification and interstate transportation of stolen property." Exhibit A at 4-5. AUSA Paul Schwartz emphasized that David Alwais cooperated with the government even though Alwais believed that the targets of the investigation were dangerous. Id. at 4 (Alwais "worked at great personal risk both to himself and his family" even though "the targets of the investigation were in fact very significant and potentially dangerous should Mr. Alwais' cooperation be disclosed").

In this case, Agent Sachs's three affidavits in support of the government's wiretap applications were filed in the fall of 1998. They are dated September, October, and November, 1998. Thus, the affidavits were filed during the same time period as David Alwais's cooperation. What's more, that cooperation targeted the Luchese family, which the government claims headed the gambling business that is the subject of the indictment in this case. Yet Agent Sachs's three affidavits contain no mention of David Alwais – a "fantastic," even "perfect" cooperating witness, willing to work "at great personal risk" against the Luchese family. On the contrary, the affidavits claim that the government's

cooperating sources were either incapable of "penetrating" or "infiltrating" the Luchese family or were too scared to do so.

In the "necessity section" of his affidavits, Agent Sachs complained that normally, confidential informants "have only limited information either furnished by a subject or learned second hand from others." Sachs Affidavit of September 8, 1998 at ¶ 107. As part of his cooperation with the government, David Alwais wore a body wire and recorded a number of meetings he had with the defendants in this case. Surely, the government must consider this information significant. After all, transcripts of these conversations will be offered to the jury at trial. Thus, Agent Sachs's generalization that confidential informants can provide "only limited information" was not applicable to this investigation.

Agent Sachs and the government claim that "infiltrating" the "close-knit" "criminal group" allegedly composed of the defendants in this case was "not possible." See Sachs Affidavit of September 8, 1998 at ¶ 108; Government's Response at 8. Nevertheless, on March 5, 1999, while wearing a body wire, David Alwais allegedly introduced Rocco Cologgi to some of the defendants in this case. Upon information and belief, the government's goal was to have Alwais set up Cologgi and the defendants in this case in a scheme to illegally import vehicles from Canada. At the time of this meeting, Rocco Cologgi was a suspect being targeted by the FBI. He was not cooperating with the government, nor was he working undercover. The government's evidence will show that the none of the defendants in this case knew Rocco Cologgi before the meeting on March 5, 1999 with David Alwais.

Thus, David Alwais was able to introduce Rocco Cologgi, a total stranger and an FBI target, to the defendants in this case. "Infiltrating" the defendants' group was not so

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD., SUITE 1300, MIAMI, FL 33131• (305) 371-6421

difficult after all, and arranging a face-to-face meeting between an outsider and the defendants was not impossible, as Agent Sachs claims in his affidavit. See Sachs Affidavit of September 9, 1998 at ¶ 108 ("your affiant does not believe it would be possible for an undercover agent independently infiltrate this group"). Just as David Alwais introduced Rocco Cologgi to the defendants, he could have introduced an undercover agent as well. The government's contention that this normal investigative technique was not available to the FBI in this investigation is not well taken.

According to AUSA Paul Schwartz, the prosecutor handling David Alwais's sentencing, Mr. Alwais was able to identify "the current leaders" of a "criminal enterprise" in South Florida. Exhibit A at 5. Despite Alwais's abilities as a cooperating defendant, Agent Sachs claimed in his affidavit that eavesdropping on Mr. Minuto's telephone conversations was necessary because Mr. Minuto would "insulate" himself from the day-to-day operations of his alleged criminal enterprise, thus making it impossible for the FBI to identify the leaders of the enterprise. Sachs Affidavit of September 8, 1998 at ¶ 108. The government reiterated this need in its response to Mr. Minuto's opening motion. Government's Response at 8. However, it is clear from the government's admissions at David Alwais's sentencing that Mr. Alwais was able to and in fact did identify the leaders of alleged criminal enterprises. Once again, Agent Sachs's conclusory allegations of what he may have encountered in other cases was not applicable to this investigation. See United States v. Kalustian, 529 F.2d 585 (9th Cir. 1976) (generalizations in wiretap affidavit based on "knowledge and experience" gained in other cases insufficient; affidavit "must show why traditional investigative techniques were not sufficient in this particular case").

According to the government, this case involves a gambling operation. The

government alleges that Marco Minuto ran the business and that co-defendant Nicolo Mariani collected the unpaid gambling debts. In his opening motion, Mr. Minuto questioned the government's failure to utilize a basic investigative technique: send a wired undercover agent to place a bet and record the transaction. What better way to obtain evidence of this alleged gambling business than by posing as sports bettor, refusing to pay a gambling debt, and waiting to see who attempts to collect the debt? The government's response to Mr. Minuto's motion does not address this, and neither does Agent Sachs in his three affidavits.

Every application to intercept telephone conversations must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or be too dangerous." 18 U.S.C. § 2518(1)(c). Agent Sachs instead provided conclusory and incomplete statements about the investigation undertaken by the FBI before the government applied for a wiretap. The FBI had a "fantastic," indeed a "perfect" normal investigative technique at its disposal -- David Alwais. The government resorted to wiretaps rather than pursue normal investigative techniques with Alwais's help. Agent Sachs's affidavits not only failed to particularize the government's need in this investigation, but also failed to account for David Alwais's availability and his willingness to work undercover, apparently at great risk to himself.

Normal investigative techniques were available to the government. They were likely to succeed and in fact were successful, as AUSA Paul Schwartz mentioned during Alwais's sentencing. Additionally, even if normal investigative techniques were dangerous, David Alwais was willing to take that risk. The necessity requirement of 18 U.S.C. § 2518(1)(c)

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD., SUITE 1300, MIAMI, FL 33131• (305) 371-6421

was not met.  All intercepted communications and all derivative evidence must be suppressed.

The government suggests that the Court should deny Mr. Minuto's motion without a hearing.  However, given the information about David Alwais and the fact that this information was not included in Agent Sachs's affidavits, Mr. Minuto submits that a hearing is required under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  Mr. Minuto has established that significant omissions in Agent Sachs's affidavits were material to the magistrate's determination of whether the government had satisfied the necessity requirement of 18 U.S.C. § 2518(1)(c).  Mr. Minuto respectfully requests that this Court hold a hearing on this matter.

Respectfully submitted,

**BLACK, SREBNICK & KORNSPAN, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
(305) 371-6421

By: _____ FOR
    **HOWARD M. SREBNICK, ESQ**
    Florida Bar Number 919063
    Attorney for Marco Minuto

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on ⟨July 16⟩_____, 2001 a true and correct copy of the

foregoing was  furnished by mail to:

Michael J. Dittoe, Esq.
Assistant United States Attorney
500 East Broward Boulevard
7th Floor
Fort Lauderdale, Florida 33394-3002

Bruce A. Zimet, Esq.
Counsel for Nicolo Mariani
One Financial Plaza
Suite 2612
Fort Lauderdale, Florida 33394

William J. Hunt, Esq.
Counsel for Joseph Minuto
William J. Hunt & Associates
155 Polifly Road
Suite 200
Hackensack, New Jersey 07601

Kerry A. Lawrence, Esq.
Counsel for Chris Greco
Briccetti, Calhoun & Lawrence, LP
81 Main Street
Suite 450
White Plains, New York 10601

By _____

**HOWARD M. SREBNICK, ESQ.**
Attorney for Marco Minuto

```
 1

 2

 3                     IN THE UNITED STATES DISTRICT COURT
                       FOR THE SOUTHERN DISTRICT OF FLORIDA
 4

 5     UNITED STATES OF AMERICA, )
                                 )
 6              Plaintiff,        )
                                 )
 7     vs.                        )
                                 )
 8     DAVID ALWAIS,              )          CASE NUMBER:
                                 )          96-6205-CR-NCR
 9                                )
                Defendant.        )
10                                )

11

12            Transcript of sentencing proceedings before the

13     Honorable Norman C. Roettger, United States District Judge, at

14     Miami, Florida, on the 29th day of October, 1999.

15

16

17     APPEARANCES OF COUNSEL:

         For the United States:      PAUL SCHWARTZ, AUSA
18
         For the Defendant:          JON MAY, ESQ.
19

20         Court Reporter:            Jerald J. Reeves, RPR

21         Proceedings recorded by mechanical stenography.

22         Transcription produced by computer.

23

24

25
```

2

1          THE COURT:    Please be seated, folks.

2          Call the case, please.

3          THE CLERK:    Case number 96 6205 criminal Roettger,

4    United States of America versus David Alwais.

5          THE COURT:    Can I appearances, please?

6          MR. SCHWARTZ:  For the government, Paul Schwartz.

7          Good afternoon.

8          MR. MAY:      Good afternoon, your Honor.

9          Jon May on behalf of David Alwais.  And my client is

10   present with me.

11         THE COURT:    Very well.  Please be seated.

12         I have reviewed the presentence report.  Are there any

13   outstanding objections at this time?

14         MR. MAY:      No, your Honor.

15         THE COURT:    Okay.  Let's proceed then with

16   allocution.  And approach the lectern and have your client join

17   you, please.

18         MR. MAY:      Good afternoon, your Honor.

19         THE COURT:    Good afternoon.  Proceed with allocution

20   in behalf of your client, sir.

21         MR. MAY:      Yes, sir.

22         As this Court is aware, Mr. Alwais pled guilty to an

23   information.  And over the course of the last number of months he

24   has been assisting the United States Government in an

25   investigation in Atlanta as well as investigations here in the

3

1    Southern District of Florida.

2           What I would like to do, your Honor, is not present

3    testimony so much as have the government proffer to the Court the

4    nature of the assistance provided by Mr. Alwais as well as

5    statements from the lead investigative agent John Simmons from

6    Atlanta as well as the investigative agent in this case Howie

7    Grover.

8           After that is completed, your Honor, I would like to

9    make a statement to the Court.  And Mr. Alwais has a statement

10   that he would like to make to the Court as well.

11          THE COURT:    Very well.

12          MR. MAY:    If we could proceed in that fashion.

13          THE COURT:    Please do.

14          MR. MAY:    At this time I would would like the

15   government to, the prosecutor Paul Schwartz to, outline

16   essentially the position of the United States.

17          I will say that the government has filed a 5K notice

18   with this Court.

19          THE COURT:    May I see a copy of that, please?

20          MR. MAY:    Yes, sir.

21          If I may approach, your Honor, this is government

22   motion for departure from guidelines based upon the defendant's

23   substantial assistance.

24          MR. SCHWARTZ: Yes, your Honor.  It was filed on October

25   27.

1          THE COURT:    I don't have it yet.

2          Well, it says the government is going to fully inform

3    the Court at the time of sentence as to the substance of the

4    defendant's cooperation.

5          Are you going to do that?

6          MR. SCHWARTZ:  Yes, sir.

7          THE COURT:    Please proceed.

8          MR. SCHWARTZ:  Thank you.

9          Your Honor, Mr. Alwais began cooperating in about the

10   fall of 1998.  He cooperated with federal authorities in South

11   Florida and thereafter cooperated with federal authorities in the

12   Northern District of Florida, Georgia, that being Atlanta,

13   Georgia.

14         I would like to first address Mr. Alwais' cooperation in

15   South Florida.

16         Mr. Alwais made consensual numerous recordings regarding

17   a significant Gambino Mafia investigation that was pending at

18   that time.  He worked with agents of the FBI and also gave

19   information regarding Luchese and Colombo Mafia targets.

20         He worked at great personal risk both to himself and his

21   family, your Honor.  The targets of the investigation were in

22   fact very significant and potentially dangerous should Mr.

23   Alwais' cooperation become disclosed.

24         He was working in an undercover capacity for

25   approximately one year on behalf of the FBI.  His information and

5

1    the consensual recordings that he made gave evidence regarding

2    counterfeit check violations, extortion and credit card

3    transactions, false identification and interstate transportation

4    of stolen property.

5           All this information is being now analyzed by the U.S.

6    Government.  And it is anticipated that indictments will be forth

7    coming regarding that investigation.

8           The information that he provided was also used in

9    certain search warrants and one electronic wire interception

10   order.

11          Mr. Alwais in South Florida identified the current

12   leaders of this enterprise and recorded those conversations when

13   it was appropriate.

14          During the course of his cooperation it became necessary

15   to relocate Mr. Alwais based upon his undercover status and the

16   potential threats to his family.  With the consent of this Court

17   Mr. Alwais was relocated on behalf of the FBI.  And again search

18   warrants are anticipated on significant organized crime targets.

19          Now, regarding his cooperation in Atlanta, Georgia, I

20   have spoken to the Assistant U.S. Attorney who is supervising

21   that investigation.

22          I have been informed that Mr. Alwais has identified

23   significant Gambino Mafia associates and individuals who have

24   associated with the Gambino organized crime family in a pending

25   investigation up there.

1          He has given information and obtained evidence regarding

2     specific unlawful acts which form RICO predicates and has

3     obtained information and evidence regarding money laundering

4     activities.  Again that is an on going investigation.  I

5     think it is safe to say the most significant investigation

6     pending in the organized crime section of the U.S. Attorney's

7     office in Atlanta.

8          The information that he has obtained has enabled the

9     government to move ahead on credit card fraud violations and wire

10    fraud violations in furtherance of their anticipated

11    indictments.

12         The information provided by Mr. Alwais has been

13    corroborated through other confidential informants and the

14    consensual recordings that he has made with the target.  Those

15    recordings in Atlanta have given evidence of obstruction of

16    justice and loud and enabled the United States to persuade other

17    criminal associates to in fact cooperate with the government.

18         It is anticipated that indictments will be forthcoming

19    in the very near future in Atlanta.  And those would be multiple

20    defendants who are associated with the Gambino organized crime

21    family.

22         It is a significant investigation up there.  And Mr.

23    Alwais' information has enabled the government to identify

24    assetss of this enterprise that the government will seek to

25    forfeit.

1        I have spoken to the FBI agents who are present in court

2   both from Atlanta and South Florida.  And they have related to me

3   unequivocally that Mr. Alwais has been one of the most credible

4   sources of cooperation that they have ever had interaction with.

5        They said his information has always been accurate and

6   credible and he has been meticulous.

7        Mr. Alwais has been meticulous in this is cooperation

8   and assistance with the government in that the tapes that he made

9   and the information that he has given has always been to the best

10  of his ability.  And they have never encountered any problem with

11  him during the course of his cooperation.

12       The United States Attorney in Florida, your Honor, has

13  certain guidelines limiting the amount of downward departure that

14  we can ask for.  So my recommendation to the Court would be 2

15  fold, one in behalf of the Southern District of Florida and then

16  there is an independent request from the Northern District of

17  Georgia.

18       Would the Court entertain those at this time?

19       THE COURT:    Whatever you want.

20       MR. SCHWARTZ:  Yes, sir.

21       On behalf of the United States Attorney in the Southern

22  District of Florida we will recommend a 50 percent reduction from

23  the bottom of the guideline range applicable to this defendant.

24  I believe the PSI lists that as 63 months.

25       So based upon my office's request we would ask for a

8

 1    reduction of 50 percent from the 63 months.

 2            Now, the Northern District of Georgia would strenuously

 3    recommend a downward departure to a period of probation, Judge.

 4    They would like to see that this defendant receive no

 5    incarceration and receive a sentence of probation.

 6            And I will communicate that strongly on behalf of the

 7    United States Attorney's office in Florida.

 8            And then I will turn to Mr. May and see if he needs to

 9    inform the Court of other portions of the substance of his

10    cooperation.

11            Thank you.

12            THE COURT:     Thank you.

13            MR. MAY:      Your Honor, in court today are 2 FBI

14    agents, one from Atlanta and one from Miami.  I wanted the Court

15    to hear from the FBI agent in Atlanta to communicate directly to

16    the Court the significance of Mr. Alwais' cooperation.

17            The Assistant U.S. Attorney in charge of that

18    investigation, Assistant U.S. Attorney Art Leach, would have been

19    hear himself but for a family matter that prevented him from

20    being here today.

21            But, your Honor, we would like to present to you the

22    statement of Federal Bureau of Investigation Special Agent John

23    Simmons.

24            THE COURT:     Very well.

25            THE WITNESS:   Good afternoon, your Honor.

1              THE COURT:     Good afternoon.

2              THE WITNESS:     I am a special agent from Atlanta,

3    Georgia.  And Mr. Schwartz has outlined probably as well as I can

4    Mr. Alwais' cooperation.

5              But what i would like to add is that this is a case that

6    is extremely significant in the Northern District.  It is a

7    landmark business in Atlanta that is world famous and has been

8    run as a racketeering enterprise.

9              We have conducted the investigation for approximately 3

10   years and never really had a great case until we were able to get

11   Mr. Alwais' cooperation.

12             Through him initially and through him only initially we

13   were able to develop excellent cooperating witnesses, all of whom

14   have put this case at a whole different level to the point where

15   we are going to have approximately 19 indictments in the very

16   near future, all significant indictments.

17             And my dealings as an FBI agent, and I have been one for

18   30 years, have been that Mr. Alwais is the perfect cooperating

19   witness.  I have never dealt with anybody that has been easier to

20   work with, more truthful, more punctual.  And that is a big thing

21   with me.

22             Our recommendation, if the Court would so honor it,

23   would be to give him probation.  He has been just fantastic.

24             Thank you, your Honor.

25             THE COURT:     Very well.  Tell me your name again,

1   sir.

2           THE WITNESS:    Yes.  John Simmons.

3           THE COURT:    Okay.

4           MR. MAY:    Your Honor, one of the issues that I

5   will address in my remarks later has to do with my observations

6   of the change in Mr. Alwais' character over the last 2 and a half

7   to 3 years that I have met him.

8           But before I make those observations I wanted to present

9   the testimony of one of the government agents, the lead

10  investigative agent here, Agent Howie Grover, who can communicate

11  to the Court the change in this man's attitude, his demeanor and

12  character that he himself has witnessed over the course of the

13  last 2 and a half years as well as the significance of his

14  assistance to the Southern District of Florida.

15          THE WITNESS:    Good afternoon, your Honor.

16          THE COURT:    Good afternoon.

17          THE WITNESS:    My name is Howie Grover.  I have been an

18  agent with the Bureau for approximately 27 years.

19          I have worked with John Simmons in New York in the

20  organized crime field.

21          And through those years I have been involved with

22  several sources and informants and people that have cooperated

23  and testified for the government.  This is the first time I have

24  ever stood up and encouraged a reduction in a sentence.

25          I was the case agent for the Corazzo investigation.  And

1    David Alwais was a defendant in that case. And I got to know him

2    through investigating him and then subsequently when he came

3    forward voluntarily to provide cooperation.

4            I have known him even though I wasn't introduced to him

5    but through Title 3 intercepts and hearing recordings and tapes.

6    I knew his attitude.

7            Subsequent to his cooperation I have become very close

8    with Dave. And in fact I have seen and talked with him numerous

9    times a week as we go out on the current investigation that we

10   have.

11           And I have noticed a change in his value system, so much

12   to the effect that I think he has realized himself now where the

13   important things in life lay. And that is with his family. I

14   don't say that about many defendants.

15           And I am pleased that the Court would listen to me

16   today. But I can't strongly enough emphasize his punctuality

17   again, his forthrightness and truthfulness with me on every

18   occasion and the agents in the Miami office that have worked with

19   him.

20           So I just wanted to make note of it. And I appreciate

21   the time to stand up here and give this testimony.

22           THE COURT:    Very well. Thank you very much, Mr.

23   Grover.

24           MR. MAY: Your Honor, if it please the Court, I would

25   like to make a few remarks, observations, arguments, and then

1  conclude with a statement from my client, unless the Court wishes

2  me to proceed in a different fashion.

3         THE COURT:    Go ahead.

4         MR. MAY:    Your Honor, there was a time in my life

5  when I was much younger when I didn't think that people were very

6  capable of change.  And as I have gotten older I have found that

7  people are capable.

8         It doesn't happen in all cases, but people are capable

9  of changing their lives.  And sometimes that is for the good and

10  sometimes it is not.

11         I have seen people change in a positive way.  And I

12  certainly know of many instances where people have changed for

13  the worse.  I have seen David change.

14         Long before I ever heard the phrase or the word or the

15  term wise guy used to describe a mobster my father would refer to

16  me as a wise guy when he thought I was trying to get away with

17  something.

18         And I know that when I first met David, as far as his

19  demeanor and his attitude, he was still at the point where he was

20  trying to work the angles.

21         But something changeed with David.  And I think what

22  happened resulted from the birth of his twin daughters.

23         Now, I know from what I have seen of people that a lot

24  of different things cause things in individuals' lives.

25  Sometimes it is an illness, personal illness.  Sometimes it is

1   the death of a loved one.  Sometimes it is getting involved with

2   the wrong crowd or becoming addicted to one kind of substance or

3   another.

4           But one of the things that I have also seen, certainly

5   in my own life, is how the birth of my first child made me change

6   from whatever I was then to what I consider to be an adult.

7           It made me feel more responsible.  I felt mature.  I

8   also thought that I was a better person as a result of that.

9           I know the stress and the anguish that David's wife

10  Tammy was undergoing when the 2 children that had just been born

11  a few weeks before had to go back to the hospital because they

12  were ill.  And I can recall quite vividly the anguish that David

13  experienced both not being present when his children were born

14  and also not being able to help his wife when she needed him to

15  be there for her and when he didn't know if what his children,

16  what his twin daughters, what was happening to them would be a

17  threat to their lives.

18          And I know that from that point David started to

19  change.  And from that point David wanted me to do whatever I

20  could to convince the government and to bring David and the

21  government together in a way that both parties would trust each

22  other.

23          And I know sometimes the biggest problem with people who

24  have a mutuality of suspicion is establishing that level of

25  trust.

1          The government didn't know if David could do anything

2   for them.  David didn't know if he could trust the prosecutors in

3   this case.

4          And David entered into a plea agreement that gave him no

5   promises with the understanding that was communicated to me on

6   more than one occasion from Brian McDonald and also from Paul

7   Schwartz that whatever happens, happens but there weren't

8   any guaranties, but if I were to communicate anything to David

9   it is that if he came through for them they would come through

10  for him.

11         And today you have seen fairly extraordinary statements

12  on behalf of the agents here, not just toward the question of

13  whether or not this man deserves a reward for his cooperation,

14  because certainly there have been a lot of people that have stood

15  before this Court who have played significant roles in

16  investigations who have been deserving of rewards for the

17  assistance that they have given in a major investigation of one

18  kind or another.

19         But what these men have testified to today, have told

20  this Court today, and I think very much from their hearts, is the

21  fact that they themselves have seen a personal transformation in

22  the soul of this man.

23         Now, your Honor, I don't presume to know what goes into

24  a judge's decision as to the kind of punishment that is

25  required.  All I know is what I read in the literature.

1          You know, there is the idea of retribution and the idea

2     of the need to protect society from future harm either through

3     specific deterrence general deterrence.

4          What I know, your Honor, is that this man has already

5     suffered to the extent that we needed, that society needed, to

6     punish him, that society's interests in retribution was important

7     to satisfy.

8          This man spent 24 months in jail before he was

9     released.  Now, when he was released he was found guilty of a

10    probation violation and the 24 months that he served in jail was

11    credited towards that probation violation.

12         So, your Honor, I am not here asking for credit for time

13    served.  What I am simply saying is that the basis of that

14    probation violation was the conduct here.  And to the extent that

15    there is any interest in punishing this man, what he went through

16    in having to spend the 24 months in jail, particularly at this

17    time of his life and at this time of the lives of his wife and

18    his children, is adequate to satisfy society's interests in

19    retribution.

20         Certainly there is nothing to be gained in the way of

21    specific deterrence in putting this man in jail any further.  I

22    don't believe that if you were to ask specifically of these

23    agents whether or not they think he will ever be involved in

24    criminal conduct again, I think that they would affirm to the

25    Court in their belief this man will never again commit another

1   crime.

2          And they say that understanding that this is not a man

3   that doesn't come before the Court without any criminal history.

4   But this is a man who when seen over the course of many months

5   whose character they themselves have come to appreciate.

6          David Alwais now has the ability to make a positive

7   contribution to society.  He has already attempted to do that

8   through his cooperation with the United States.

9          And as Assistant U.S. Attorney Paul Schwartz has

10  indicated, with some risk, serious risk, to his life.

11         He has assisted the government.  He now has the

12  opportunity to go back to his family, to help raise those

13  children, to be a good role model for these children, to make a

14  positive contribution to the lives of his children and to play a

15  positive role in the community.

16         What I am suggesting, your Honor, is that we all know,

17  and certainly David is prepared to accept whatever punishment

18  this courts imposes, but while this Court certainly is within its

19  rights and its discretion and the appropriate circumstances to

20  impose some period in jail, we in connection with the government,

21  in conjunction with the government, believe that in this instance

22  the just and appropriate sentence and the one sentence which will

23  be best for everyone including David, his children, his family,

24  the government and society, would be a period of probation.

25         There may be, depending on what this Court decides it

1    should impose in the way of a sentence, some additional

2    recommendations or arguments that would be appropriate depending

3    on what this Court does.

4         At this time, your Honor, I would like to have Mr.

5    Alwais stand before the Court and make a statement to the Court.

6         THE COURT:    Very well.  Mr. Alwais, you may say what

7    you would like in your own behalf in mitigation of punishment.

8         THE DEFENDANT: Thank you, your Honor.

9         THE COURT:    You don't have to say anything, but you

10   may.

11        THE DEFENDANT: Okay.  Your Honor, thank you for giving

12   me this opportunity to address the Court.

13        I am so sorry for my actions in the past.  I take full

14   responsibility.

15        My problems started with a bad gambling problem at a

16   very young age which led me to do crazy things in life and

17   associate myself with the wrong people.

18        I am now getting help for my problem through Gambler

19   Anonymous.

20        Since my arrest on December 18, 1996 a lot of things

21   changed my life around.  My wife Tammy was pregnant with my twin

22   daughters Brittany and Nicole.  I was incarcerated for their

23   birth.

24        We were trying to have children for 10 years.  Finally

25   we did in vitro fertilization and we had 2 miracle babies that

1    God blessed us with.

2          The pain I went through not being there on the day they

3    were born and when they became very sick in the hospital was

4    unbearable.  I was turned down for bond and spent 2 years

5    incarcerated at FDC.

6          I live with this pain every day of my life being without

7    my wife and children during those times.  It really was an

8    awakening to what is important in life.

9          Your Honor gave me bond on September 30, 1998.  As I

10   stand here today I want to personally thank the Court.

11         I have proven to Tammy I am a good husband.  And to

12   Brittany and Nicole I am a good daddy.  Being there for Tammy,

13   Nicole and Brittany is so special for us as a family.  We as a

14   family already know what it is like to lose your freedom.

15         As I stand in front of this Court today I do not take my

16   freedom for granted.  And in the past 13 months I didn't just

17   have to prove to my family I am a very different person but I had

18   to prove to the government and the community that David Alwais is

19   no longer the person that everybody perceived I was.

20         Working in the community every day is exciting because I

21   am able to support my family.  I am doing better financially than

22   I ever have.

23         In the past 13 months not only did I have to have a full

24   time job but I have to prove to the government I changed and did

25   everything in my power to prove that I kept my family together.

1           I told the government that I was willing to do whatever

2    it took to keep my family together with no promises.

3           I risked my life in the last 13 months every day.

4    Because of this life threatening situation I had to relocate my

5    family.  And we all are adjusting to the new surroundings.  It

6    has taken some time.

7           If I were to be incarcerated my wife would be left with

8    no support financially or emotionally for our children in the new

9    location.

10          My new job is with a big company.  This is a new start

11   in a career building opportunity.  They offer insurance for my

12   family and a 401 K for retirement.

13          I wish my wife and children could have been here for

14   this very important day to address the Court.  But due to our

15   relocation it was too far to travel with 2 small children.

16          I am so glad I have changed my life around.  I am happy.

17          Special Agent Howie Grover, Special Agent John Simmons

18   and Special Agent Terry Feisthammel who all gave me this

19   opportunity to prove myself.

20          I pray your Honor the take into consideration everything

21   I accomplished in this short period.  Please give me the same

22   opportunity to keep my family together.

23          I know there is still a lot to do.  And I will continue

24   to help the government.  I am sorry I can't change the past, but

25   I know I can change the future.

20

1           Thank you, your Honor, for your time.

2           THE COURT:    Thank you, sir.

3           MR. MAY:    Your Honor, at this time that concludes

4    the allocution by the defense.

5           THE COURT:    Very well.  Thank you, Mr. May.

6           Anything further from the government?

7           MR. SCHWARTZ:  No, your Honor, thank you.

8           THE COURT:    Very well.  Why don't you proceed to the

9    lectern with your client, Mr. May?

10          MR. MAY:    Yes, your Honor.

11          THE COURT:    Now, the guideline imprisonment range is

12   63 to 78 months.  Probation is not authorized.  And the pre

13   sentence report states a fine range of 75 hundred to 75 thousand

14   dollars.  Supervised release is 2 to 3 years.

15          And the government has filed a 5K1 motion which is not

16   reflected in the probation presentence report.  I am going to

17   grant the motion and impose a sentence below the guideline range.

18          It is the finding of the Court that the defendant is not

19   able to pay a fine and accordingly no fine will be imposed.

20          Now, I have had the FBI from Fort Lauderdale recommend

21   around 50 percent of the base guideline range of 63 which would

22   be somewhere in the neighborhood of 31 or 32 months.  And the

23   Atlanta FBI apparently recommends probation.

24          I think that it is appropriate here to have a sentence

25   that is a bit of a compromise between the 2 recommendations.

1          Pursuant to the Sentencing Reform Act of 1984 it is the

2    judgment of the Court that the defendant David Alwais -- is that

3    you, sir?

4          THE DEFENDANT: Yes, sir.

5          THE COURT:     -- is hereby committed to the custody of

6    the Bureau of Prisons to be imprisoned for a term of 16 months as

7    to the one count information.

8          Upon release from imprisonment the defendant is placed

9    on supervised release for a term of 3 years.  While you are on

10   supervised release you are not to commit any federal, state or

11   local crimes.

12         The defendant is prohibited from possessing a controlled

13   substance such as an illegal narcotic.  And in addition you are

14   to comply with the standard conditions of supervised release as

15   recommended by the U.S. Sentencing Commission and with the

16   following additional conditions.

17         You are permitted to cooperate with the Federal Bureau

18   of Investigation for a period of 6 months provided such

19   cooperation is in accordance with the informant policy of the

20   U.S. probation office.

21         The defendant shall submit to a search of his person or

22   property conducted in a reasonable manner at a reasonable time by

23   the U.S. probation officer.

24         You are to maintain, sir, full time legitimate

25   employment and not to be unemployed for a term of more than 30

1    days unless it is approved by the U.S. probation office.

2         Further you are to provide documentation including but

3    not limited to pay stubs, contractual agreements, W2 wage and

4    earning statements and other documents requested by the U.S.

5    probation officer.

6         And the defendant is not to be engaged in any business

7    that offers securities, investments or business opportunities to

8    the public.

9         The defendant is further prohibited from engaging in

10   telemarketing, direct mail or national advertising campaigns for

11   business purposes without the permission of the U.S. probation

12   officer.

13        And the defendant shall obtain prior approval from the

14   U.S. probation officer before entering into any self employment.

15        The defendant shall provide complete access to financial

16   information including disclosure of all business and personal

17   finances to the U.S. probation office.

18        You are already a felon, but you certainly are one

19   again, Mr. Alwais, and you are not to possess a firearm or other

20   dangerous device for the rest of your life unless your right to

21   do so is specifically restored to you.

22        The statute requires an assessment of one hundred

23   dollars.  And that is due and payable immediately.

24        Now that sentence has been imposed does the defendant or

25   his lawyer object to the Court's findings of fact or to the

1    manner in which sentence was pronounced?

2        MR. MAY:        No, your Honor.  But I do have a couple

3    of questions for the Court, if I may.

4        THE COURT:      Go ahead.

5        MR. MAY:        In your sentence did I understand the

6    Court was staying his surrender to a prison for the next 6 months

7    so that he can continue doing work that he is doing?

8        THE COURT:      No.

9        MR. MAY:        I misunderstood.

10       THE COURT:      No.  He is given permission to work with

11   them.  Now, I certainly can defer the reporting dateiet.

12       MR. MAY:        It would be of help if the Court could

13   defer the reporting date for that 6 month period so that he can

14   continue to do the, be of assistance to the government.

15       THE COURT:      Is that the request of the government?

16       MR. SCHWARTZ:  Yes, your Honor, the government would so

17   request.

18       THE COURT:      Very well.

19       MR. MAY:        Your Honor, I would also ask, well, while

20   this is certainly not binding, if the Court could recommend to

21   the Bureau of Prisons that Mr. Alwais be placed, when he does

22   surrender, in a camp facility near where his family is, wherever

23   that is.

24           I have no idea where he has been relocated, your Honor.

25           THE COURT:      I will recommend South Florida as a place

1    of confinement.

2            It is not binding on the Bureau of Prisons.

3            MR. MAY:       Your Honor, we wouldn't want South

4    Florida.  He is some place up in the northeast.  I don't know

5    where he is relocated.

6            THE COURT:     Somewhere near New York?

7            MR. MAY:       New Jersey, your Honor.

8            THE COURT:     There is an institution at Fort Dix, to

9    my understanding.

10           MR. MAY:       No, your Honor.  That would put him with

11   all the other people.

12           THE COURT:     Okay.

13           MR. MAY:       Could we just leave it in the northeast?

14           THE COURT:     Let's put it in the northeast.  They can

15   try to avoid that.  It might be Danbury or some place like that.

16           MR. MAY:       Your Honor, one final request, and that

17   is because he has been reporting to the FBI as opposed to a

18   particular probation officer, because probation  doesn't know

19   where he is at currently either, can he continue to report --.

20           THE COURT:     I noticed that.

21           MR. MAY:       Can he continue to report to Agent Grover

22   until the time that he has to surrender himself to the prison?

23           THE COURT:     Very well.

24           MR. MAY:       Thank you, your Honor.

25           Your Honor, I have one last request of the Court.

25

1        When Judge Zloch imposed a sentence for the probation

2   violation he imposed a sentence of 24 months.  That sentence was

3   given credit for the time served that Mr. Alwais had served in

4   prison as of that time.

5        This Court, I believe, has the discretion to make this

6   sentence concurrent with that sentence.  We would ask that the

7   Court consider doing that.

8        THE COURT:    Very well.  I don't know how much time is

9   left.

10       MR. MAY:    Well, your Honor, if this Court -- he did

11  24 months.  If this Court gives him the 16 months concurrent to

12  what Judge Zloch's sentence was then essentially he has served

13  his sentence.

14       THE COURT:    I don't think that is set forth in the

15  presentence report anywhere.

16       MR. MAY:    If I could point out a specific guideline

17  provision for this Court to consider, under section 7 B 3 point

18  one, revocation of probation or supervised release, it states

19  that when, if you look on, I don't know which ome, I have the

20  West version of it, but in section F it says that if --.

21       THE COURT:    Well, give me the whole citation.

22       MR. MAY:    Guideline section 7 B 1 point 3.

23       THE COURT:    7 B as in boy?

24       MR. MAY:    Yes, your Honor.  7 B one point 3.  It is

25  a policy statement having to do with revocation of probation or

1    supervised release.

2          Now, your Honor, if you look at paragraph F, paragraph F

3    in sum and substance says that where you have a period of a

4    sentence imposed for a revocation of probation or supervised

5    release it shall be ordered to run consecutively to a sentence of

6    imprisonment.

7          But the commentary says when the situation is reversed,

8    that is where you have a sentence which is imposed after a

9    previous revocation of probation or supervised release, it is the

10   commission's recommendation that any sentence of imprisonment for

11   a criminal offense be consecutive.

12         Now, it is our position, your Honor, that assuming that

13   this Court were to find that it would be influenced or guided by

14   the policy statement of 7 8 one point 3, the commentary does not

15   require, only recommends, that it be consecutive where the

16   substantive, the sentence on the substantive offense comes after

17   the revocation of probation.

18         In addition, your Honor, in addition, the case law

19   around the country is uniform that policy statements found in

20   section 7 are not binding on the Court.

21         And I have for the Court the decision of the 11th

22   Circuit in U.S. versus Hafearka.

23         This is not to say, your Honor, that you can't be

24   influenced by the policy statement.  It simply means, your Honor,

25   that in the exercise of your discretion you are not required to

1    follow the policy statement.  Your hands are not tied in this

2    matter.

3           But even if you do follow the policy statement that says

4    that the Court shall impose a consecutive sentence for a

5    revocation of probation or supervised release, again the

6    commentary indicates that that is only a recommendation to the

7    Court when the sentence that the Court is imposing comes after

8    the revocation of probation or supervised release.

9           And I would like to point out that in this case it is my

10   understanding that with Anthony Ruggiano when this Court imposed

11   sentence the Court ran the sentence that this Court imposed

12   concurrent to a state sentence.

13          And I understand it is different.  But this Court in

14   this case as to Mr. Ruggiano imposed a concurrent sentence as to

15   a state sentence that Mr. Ruggiano was already serving.

16          So I think the Court, I suppose, I don't know if it is

17   precedent in this case, but certainly the Court has acted in a

18   similar fashion in this very case.

19          And I believe that the Court has the discretion should

20   it want to impose a concurrent sentence and that nothing in the

21   guideline prohibits the Court from doing that.

22          Your Honor, if I can quote from the 11th Circuit in the

23   Hafearka pin on what is page 2 of the copy that I have given you,

24   was page 361 of the West opinion, the sentencing commission

25   specifically stated in chapter 7 that it issued advisory policy

1   statements rather than guidelines for sentences imposed upon the

2   revocation of supervised release in order to provide district

3   courts with greater flexibility.

4          So, your Honor, -- I will stop, your Honor.  I see

5   you are reading that.

6          THE COURT:    I realize it is just a target and not a

7   sentencing guideline.  However, it seems to me that it makes

8   sense where you are talking about 2 different matters, especially

9   where you have a third element in that formula, in that

10  situation, of a violation of probation, supervised release, you

11  have really got 3 different matters in there and I don't think it

12  makes any sense to have them, to have the punishments run

13  concurrently.

14         There is the original matter in front of Judge Zloch,

15  the violation of the release or probation, and then you have got

16  this matter.    And I think those matters deserve that the third

17  situation such as here be a consecutive sentence.

18         MR. MAY:      Your Honor, I have one last

19  recommendation.

20         Because the government filed a 5K I believe this Court

21  has the discretion to do whatever it likes in terms of how it

22  fashions the sentence.  The Court could, I believe, place the

23  defendant on, given the 5K, probation and allow him to serve the

24  sentence as a form of house arrest or community confinement.

25         THE COURT:    Well, I could.  I don't think that is

1   appropriate.  And I have given him really what amounts to a 25

2   percent sentence for his cooperation.  And that is more than I

3   customarily allow.

4          MR. MAY:       And we very much appreciate it, your

5   Honor.

6          THE COURT:     I have not been heavy handed at all on

7   him in this instance.  But that request is denied.

8          So let me go back and recapitulate where we are.

9          I have given him 16 months, 3 years supervised release,

10  one hundred dollar special assessment.  I have deferred the

11  reporting date for 6 months which would take it to April 29.  And

12  April 29 in the year 2000 is of course a Saturday.  So we will

13  move that reporting date over to May first.

14         May first, 2000 the defendant is to report to the

15  institution designated by the Bureau of Prisons at his own

16  expense by 12 noon.  Or if he doesn't report there by that time

17  he must report to the U.S. Marshal, 300 North Miami Avenue, by 12

18  noon.  And I will recommend South Florida.

19         MR. MAY:       No, your Honor.

20         THE COURT:     I am sorry.  Northeast U.S.

21         And 16 months is to be consecutive to the sentence

22  imposed by Judge Zloch.  And I don't know the file number on that

23  or the case number.

24         THE CLERK:     The case number is 88 dash 81 zero 8

25  criminal Zloch.

1      THE COURT:    Thank you.

2      Mr. Alwais, you have made a considerable amount of

3  progress.  And I am encouraged by that.  And good luck to you,

4  sir.

5      MR. MAY:    Thank you, your Honor.

6      THE COURT:    You do have a right of an appeal as to

7  the terms of the sentence.  And if you take an appeal it must be

8  done within 10 days of the judgment being entered in this case.

9      And there are procedures available for you to take an

10  appeal as to the terms of the sentence only even if you do not

11  have the money to pay for it.

12      Mr. May, please advise him of his appellate rights and

13  the limitations on those rights, if you will.

14      MR. MAY:    Yes, your Honor, I will.

15      THE COURT:    And perfect an appeal if he desires to

16  take one.

17      MR. MAY:    Yes, sir.

18      THE COURT:    Thank you very much, folks.

19      (Court in recess)

20

21

22

23

24

25                    CERTIFICATE

OFFICIAL REPORTER UNITED STATES DISTRICT COURT

1      I, JERALD J. REEVES, Official Court Reporter, hereby

2  certify that the foregoing is a correct transcript from the

3  record of proceedings in the above-entitled matter.

4

5

6

7  _____          January 3, 2001
        JERALD J. REEVES, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25