UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6088-CR-UNGARO-BENAGES

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MARCO MINUTO, et al.,

        Defendant.
_____/

**GOVERNMENT'S RESPONSE TO MARCO MINUTO'S
MOTION TO PRODUCED SUBPOENAED TAPES AND MOTION TO QUASH**

Comes now the United States and files its Response to Marco Minuto's Motion to Produce Subpoenaed Tapes Prior to Trial and Motion to Qaush the Subpoena.

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

The defendant states that on May 31, 2000, he served a subpoena on the Federal Detention Center (FDC) calling for the production of tape recorded conversations between the defendant Nicolo Mariani and Marcello Grasso, who is a cooperating defendant. The undersigned did not learn of the existence of this subpoena until receiving a copy of the Defendant's Motion to Produce the subpoenaed tapes prior to trial. The United States, for the reasons set forth herein, moves to qaush the subpoena and moves for reconsideration of the Court's order entered on July 26, 2001 granting the defendant's motion.

At the outset, the United States notes that its response to

the defendant's motion was not due until July 30, 2001, in that the United States was served with the motion by mail bearing a certificate of service dated July 17, 2001. Under the local rules, a party served with a motion by mail has thirteen days (ten days plus three extra days for service by mail) to file a response. Rule 7.1(C), <u>Local Rules of the United States District Court For the Southern District of Florida</u> (April 15, 2001). Consequently, the Court's order granting the defendant's motion was inadvertently entered <u>before</u> the United States could respond to the motion. This response is timely filed as is the Motion to Quash in that the undersigned first learned of the existence of this subpoena upon being served with the defendant's motion. Therefore, the United States requests that this matter be considered <u>ab initio</u> and not as a motion for reconsideration.

 The defendant states that the conversations between Grasso and Mariani will show that Grasso has no personal knowledge about the matters about which he will testify and that he is fabricating his testimony to fit the government's theory of the case. (Defendant's motion at p.2). In support of this proposition, the defendant offers no evidence. For example, the defendant has failed to submit an affidavit from Mariani, a participant in these conversations, stating that Grasso admitted to him that he would fabricate his testimony.

 Furthermore, the United States has produced in discovery

transcripts of conversations between Mariani, Grasso and other persons that clearly indicate Mariani's own guilt. Thus, the Court has been presented with no evidence that conversations between Grasso and Mariani are exculpatory in nature. If it were true that Grasso stated in recorded conversations that he would fabricate testimony, it would have been easy for Mariani to have executed an affidavit stating this in order to establish the relevance of the subpoenaed tapes. Defendant, however, failed to undertake even this simple effort in order to demonstrate the relevance of the tapes. As demonstrated below, Defendant's motion is insufficient to require the government to produce the requested materials.[1]

II. **BACKGROUND INFORMATION CONCERNING FDC RECORDINGS**

The procedures employed by the Bureau of Prisons (BOP), as indicated below, make the requested retrieval of records burdensome. In order to fairly balance the request of the defendant, in light of his failure to set forth evidence that shows the relevance of the tape recorded conversations, with the burden imposed by the request on the Bureau of Prisons should be considered and carefully weighed by the Court.

The BOP monitors and records outgoing calls made from

---

[1] The undersigned notes that the Federal Bureau of Investigation (FBI) is in possession of some tape recorded conversations, made by FDC, between Grasso and Mariani. It will voluntarily produce those tape recordings to counsel for Minuto.

telephones that are located inside the prison institutions, and that are designated for use by inmates, in order to ensure the safety, security and good order of its prison facilities. <u>See</u>, 28 C.F.R. §540.102. The telephone calls are recorded and stored on master reel-to-reel tapes. Each master reel-to-reel tape contains multiple channels; each channel is dedicated to, and records, conversations held on a particular telephone within the institution and, in the case of FDC-Miami, contains 60 separate channels. Up to 24 hours of conversation may be recorded on each channel of each master reel-to-reel tape. Therefore, one master reel-to-reel for any given day may contain approximately 2000 hours of recorded material.

FDC-Miami uses an Inmate Telephone System (ITS) whereby an inmate can make a call using his/her inmate identification number (Pin number), through which the cost of the call is debited from that inmate's commissary account. Under the ITS system, recorded calls may be retrieved on the basis of an inmate's registration number and name. However, the BOP does not have the technical ability to determine whether a particular inmate is the individual actually participating in the recorded telephone conversation. Thus, even where an inmate's PIN number is used to place a call, there is no guarantee that the inmate whose PIN number is being used is the inmate who actually participated in the conversation. Therefore, in all cases individual voice

identification is required to ascertain with certainty the identity of the inmate participating in the conversation.

The process that must be used in order to retrieve a particular inmate's telephone calls is complicated and time-consuming. In order to accomplish this task, the BOP first generates a computer printout of the dates and times when an inmate's PIN number was used to make calls from the prison. The BOP must then identify each master reel-to-reel tape that contains an outgoing call by the identified inmate registration number. Once the master reel-to-reel tape is identified and located, a technician must search for the appropriate channel and time when the call was placed. If there is a variation between the time listed on the computer printout and the time governing the reel-to-reel tape recording system, the process can be extraordinarily time consuming. Even under ideal conditions, it takes approximately twenty minutes to locate and begin to retrieve a single telephone call. The length of time required to record the call would vary with the length of the call, and would constitute an additional expenditure of time and resources. Furthermore, there is no "high speed" duplicating capability. Thus, once the telephone call is located on the appropriate channel, the call must be re-recorded onto a cassette tape. In addition, pursuant to BOP policy, each call must be duplicated onto a separate cassette tape. Also pursuant to BOP policy,

after particular recorded telephone calls are reproduced onto cassette tapes for court proceedings, the master reel-to-reel tapes must be safeguarded as evidence. Accordingly, such master reel-to-reel tapes must be replaced with entirely new reel-to-reel tapes, necessitating the expenditure of substantial sums of money.

Therefore, the production request made by the defendant would entail the expenditure of a considerable amount of time and money. The amount of time and resources that would have to be dedicated to identifying, retrieving, and duplicating tape recordings would result in the diversion of the BOP's time and equipment from its primary functions, including the gathering of intelligence regarding prison disruptions, escapes and smuggling of contraband. This diversion, in turn, could have serious consequences in terms of the security of the FDC-Miami and the safety of all inmates, staff and the public.

### III. THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE DOCUMENTS AND TESTIMONY SOUGHT ARE IRRELEVANT AND IMMATERIAL

Even if the documents and testimony sought by defense counsel were expressly within the scope of Rule 16, Fed.R.Crim.P., which they are not, any discovery request must be preceded by a showing of materiality. United States v. Buckley, 586 F.2d 498, 506 (5th Cir. 1978), cert. denied, 440 U.S. 982 (1979); United States v. Ross, 511 F.2d 757, 762-63 (5th Cir.)

("materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case"), cert. denied 423 U.S. 836 (1975); Fed.R.Crim.P. 16(a)(1)(c). There has been and can be no such showing here with respect to the requests in the subpoenas since defendant's request lacks specificity regarding the materials he proposes to attempt to locate, and reflects the completely speculative nature of his proposed undertaking. The defendant has presented no evidence, such as an affidavit from Mariani who was a participant in the subpoenaed conversations, which even hints that Grasso is fabricating his testimony. If defendant's proffered reason for requesting the tapes were correct, it would have been easy to secure such an affidavit from Maraini. However, no such evidence has been presented to the Court.

Therefore, since it is clear that without further specificity regarding the material sought, the defendant will not be able to show the Court how each tape he requests is relevant and material to his defense. Since the defendant has made no sufficient showing to warrant access to said materials, the subpoenas should properly be quashed. United States v. North, 910 F.2d 843 (D.C. 1990) cert. denied, 111 S.Ct. 2235 (1990).

**IV. THE SUBPOENA SHOULD BE QUASHED BECAUSE THEY ARE UNREASONABLE, OPPRESSIVE, AND VIOLATIVE OF RULE 17, FED.R.CRIM.P.**

Rule 17 of the Federal Rules of Criminal Procedure is not a

general discovery device. <u>United States v. Nixon</u>, 418 U.S. 683, 698-700 (1976); <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 219-221 (1951)); <u>United States v. Haldeman</u>, 559 F.2d 31, 75 (D.C. Cir. 1976), <u>cert</u>. <u>denied</u>, 431 U.S. 933 (1977). "Courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in <u>Fed.R.Crim.P</u>. 16." <u>United States v. Cuthbertson</u>, 630 F.2d 139, 146 (3d Cir. 1980), <u>cert</u>. <u>denied</u>, 449 U.S. 1126 (1981).

Under Rule 17(c), the Court may quash an "unreasonable and oppressive" subpoena. Moreover, the Court may require a showing by the party issuing the subpoena <u>duces tecum</u> that the subpoena meets the standards originally announced by Judge Weinfeld in <u>United States v. Iozia</u>, 13 F.R.D. 335, 338 (S.D.N.Y. 1952) and endorsed by the Supreme Court in <u>United States v. Nixon</u>, <u>supra</u>., 418 U.S. at 699, which held:

> . . . cases decided in the wake of <u>Bowman</u> have generally followed Judge Weinfeld's formula-tion. . ., as to the required showing. Under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

Rule 16 defines the permissible limits of discovery in criminal cases, and it is impermissible to use subpoenas issued under Rule 17 to circumvent the proscriptions of Rule 16.

Courts have repeatedly quashed subpoenas similar to those served here by defense counsel, where the issuing party cannot show relevance, and where the subpoenas are obviously blind fishing expeditions seeking immaterial evidence. See e.g., United States v. Wencke, 604 F.2d 607, 612 (9th Cir. 1979) (subpoenas which sought "all files, records, correspondence, writings, interoffice communications, interagency communications and reports relating to investigation" of defendant quashed); United States v. Johnson, 495 F.2d 1097, 1102 (5th Cir. 1979) (broad discretion in trial court to weigh materiality in deciding whether to grant request for subpoena); United States v. Daly, 481 F.2d 28 (8th Cir.), cert. denied, 414 U.S. 1064 (1973).

In the case at bar, the defendant's request would require the analysis of numerous tapes  The defendant is apparently completely unaware of the specific content of these tapes and makes his request on the mere assertion that Grasso is fabricating his testimony and that this will be revealed by the recorded conversations. As previously observed, however, Minuto has presented no evidence that the recordings contain this information. If these allegations were true, Minuto could have easily obtained an affidavit from Mariani stating that Grasso, in

a recorded conversation with Mariani, admitted to Mariani that Grasso was going to lie in order to curry favor with the government. The defendant has offered no evidence of this, even though he has access to Mariani who was the only other participant in the conversations. In finding a similar request to be a misuse of the trial subpoena, Judge Hoeveler wrote as follows:

> If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.

United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D.Fla. 1991). See also, United States v. Valencia-Romero, 748 F. Supp. 64 (E.D.N.Y. 1990), in which the court stated the following in refusing to enforce a defendant's subpoenas directed to government agents whose testimony he sought at a suppression hearing:

> Although it is obvious that the testimony which defendant "hopes" to secure, via the present subpoenas, would be material and favorable to his defense, he has made no plausible showing that such testimony would be forthcoming. Defendant cannot "simply posit the testimony most helpful to him"; rather, he must offer some "reasonable basis" to believe that the testimony would be beneficial to his case. United States v. Ginsberg, 758 F.2d 823, 831 (2d Cir. 1985). Unbridled speculation falls far short of this standard.
>
> Id. at 65.

By seeking unfettered access to seven months' worth of audio tapes, the defendant has caused the issuance of subpoenas which are unreasonable, oppressive, overbroad and violative of Rule 17. On that basis alone, they should properly be quashed.

### V. AUTHORIZATION HAS NOT BEEN GRANTED FOR THE TESTIMONY AND PRODUCTION OF RECORDS BY EMPLOYEES OF THE U.S. DEPARTMENT OF JUSTICE.

The United States would respectfully note that although defense counsel has made some attempt to comply with the federal regulatory requirements of 28 C.F.R. §16.23, defense counsel's statement is insufficient in that his summary of testimony sought is non-specific as to what he expects to elicit from these witnesses. In fact, as noted above, his request is non-specific and uninformative as to the exact date and nature of the conversations allegedly sought because defense counsel is merely "fishing."

Consequently, based on the foregoing, the testimony and production defendant seeks has not been authorized. The United States respectfully refers the Court's attention to 28 C.F.R. §16.26, setting forth some of the factors to be weighed by the authorizing Department official in response to a subpoena or other request: whether disclosure is appropriate under the rules of procedure governing the case (§16.26(a)(1)), whether disclosure is appropriate under the relevant substantive law concerning privilege (§16.26(a)(2)); whether disclosure would

violate Rule 6(e) (§16.26(b)(1)); whether disclosure would reveal classified information (§16.26(b)(3)); whether disclosure would reveal investigatory records compiled for law enforcement purposes, and would disclose investigative techniques and procedures, the effectiveness of which would thereby be impaired (§16.26(b)(5)). Disclosure is not authorized if any of the matters contained in section 16.26(b) exist, which is the case herein.

The federal regulations governing the testimony and production of documents by DOJ employees were promulgated under authority of the federal housekeeping statute, 5 U.S.C. § 301, to centralize decisions on releasing information in response to subpoenas and other demands of courts or other authorities. Title 28, Code of Federal Regulations, Section 16.21, et seq.

The U.S. Department of Justice regulations referenced herein must be accorded the force of law because they are "lawful . . . and fully authorized by law." State of North Carolina v. Carr, 264 F.Supp. 75, 80 (W.D.N.C), appeal dismissed, 386 F.2d 129, 131 (4th Cir. 1967) (upholding Department of Justice Order No. 124-62, predecessor to 28 C.F.R. §§ 16.21 et seq. and reversing state court contempt order issued against agent who refused to testify).

The United States Supreme Court upheld the regulations governing the testimony and other evidentiary production of

employees of the U.S. Department of Justice in <u>United States ex rel. Touhy</u> v. <u>Ragen</u>, 340 U.S. 462, 71 S.Ct. 416 (1951). In <u>Touhy</u>, the court overturned an order holding a special agent of the FBI in contempt for failing to produce subpoenaed investigatory material in a federal habeas corpus proceeding. In that case, the U.S. Department of Justice had not authorized the production of the materials. The agent was held in contempt of court when he declined to produce the relevant files, pursuant to pertinent DOJ regulations. <u>Id</u>. at 465. In its decision, the Court noted that an employee of the U.S. Department of Justice did not have discretion to honor a demand for official information and that the agent was bound to follow the lawful orders of the Attorney General. <u>Id</u>. at 467. The <u>Touhy</u> ruling follows a judicial policy against holding a subordinate responsible for the discretionary acts of his superiors. <u>N.L.R.B.</u> v. <u>Capitol Fish Co.</u>, 294 F.2d 868, 874 n.13 (5th Cir. 1961).

It should be noted that the Eleventh Circuit continues to interpret <u>United States ex rel. Touhy</u> v. <u>Ragen</u> as requiring the quashing of subpoenas for testimony where agency regulations prohibit a government employee from giving such testimony. <u>United States</u> v. <u>Bizzard</u>, 674 F.2d 1382, 1387, <u>cert</u>. <u>denied</u>, 459 U.S. 973, 103 S.Ct. 305 (1982); <u>Moore</u> v. <u>Armour Pharmaceutical</u>

Co., 927 F.2d 1194, 1197 (11th Cir. 1991).

Under the circumstances of instant case, the subpoenas which seek to compel testimony and/or production by DOJ employees should be quashed since the pertinent regulations forbid these individuals from complying without authorization, and that authorization has not been, and cannot be, granted for the reasons stated above.

### VI CONCLUSION

WHEREFORE, for the reasons stated above, the United States respectfully requests this Honorable court to quash the subpoenas which have been issued for testimony and production by the Custodian of Records, FDC-Miami, and issue a protective order which would prevent the defendant from compelling the testimony of this individual.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: *[signature]*
MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY
Court ID #A5500209
500 E. Broward Blvd., 7th Floor
Fort Lauderdale, FL 33394
Telephone: (954) 356-7255

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed, this 30th day of July, 2001, to:

Howard M. Srebnick, Esq.
Black, Srebnick & Kornspan, P.A.
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
Counsel for Marco Minuto

Bruce A. Zimet, Esq.
One Financial Plaza
Suite 2612
Fort Lauderdale, Florida 33394
Counsel for Nicolo Mariani

William J. Hunt, Esq.
William J. Hunt & Associates
155 Polifly Road
Suite 200
Hackensack, New Jersey 07601
Counsel for Joseph Minuto

Kerry A. Lawrence, Esq.
Briccetti, Calhoun & Lawrence, LLP
81 Main Street
Suite 450
White Plains, New York 10601
Counsel for Chris Greco

                                                MICHAEL J. DITTOE
                                                ASSISTANT UNITED STATES ATTORNEY