00-6088.rr

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6088 CR UUB

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARCO MINUTO,

    Defendant.
_____/



### REPORT AND RECOMMENDATION

**This matter** is before this Court on Defendant Marco Minuto's Motion to Suppress Fruits of Wiretaps (D.E. 214). The Court has considered the motion, the response, the reply and the surreply ordered by the Court..

### Facts

Defendant is charged with, inter alia, violations of the Racketeer Influenced and Corrupt Organization Statute (RICO). Specifically, Defendant is charged with conspiracy to violate RICO, 18 U.S.C. §1962(d), with the underlying pattern of racketeering activity consisting of multiple violations involving the following crimes: illegal gambling, 18 U.S.C. §1955, money laundering, 18 U.S.C. §1956; collecting extensions of credit by extortionate means, 18 U.S.C. §894; the sale and receipt of stolen property, 18 U.S.C. §659; bank fraud, 18 U.S.C. §1344; fraud in connection with identification documents, 18 U.S.C. §1028; mail fraud, 18 U.S.C. §1341; the transmission of wagering information, 18 U.S.C. §1084; obstruction of justice, 18 U.S.C. §1503; and interference with commerce by extortion, 18 U.S.C. §1951. The allegations arise out of an alleged illegal sports

1

bookmaking operation conducted by members and associates of the Luchese organized crime family in South Florida and New York.

Defendant moves to suppress communications intercepted pursuant to three orders of interception dated September 8, October 13 and November 16, 1998 on telephone lines (954) 782-3172, (954) 562-0082, (561) 417-7981 and (914) 523-4166. Defendant argues that the applications failed to recite sufficient information required to obtain a wiretap. The applications were each supported by an affidavit completed by FBI Special Agent Darrin S. Sachs.

### Discussion

The pertinent statutory provision, 18 U.S.C. §2518, provides that each application for a wiretap must include:

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous...

This section does not require that "the application provide a 'comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." United States v. Nixon, 918 F.2d 895, 901 (11th Cir. 1990) (citing United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir.), cert. denied, 479 U.S. 854 (1986)). Essentially, the concern is that the Court be convinced, given the facts of the particular case, that wiretaps are not being "routinely employed as the initial step in criminal investigation." United States v. Giordano, 416 U.S. 505, 515 (1974).

In his September 8, 1998 affidavit, Special Agent Sachs states that "authorization for wire interception is necessary because, as discussed above, many of these normal investigative techniques have been tried or reasonably appear to be unlikely to succeed if tried or are too dangerous." Sachs Aff. 9/8/98, ¶109. Defendant argues that Agent Sach's affidavit "is replete with details of how the

2

use of confidential sources, a normal investigative technique, was consistently producing tangible results." Mot. p. 4, citing Sachs Aff. 9/8/98, ¶¶ 33-41, 43A-48, 49A-C, 50-61, 63-64.1, 66-66.2.

Defendant notes that the Special Agent Sachs conceded in the affidavit that "surveillance ha[d] been conducted in this investigation and [had] assisted in disclosing some of the associations and places of meetings by participants," and that toll records of telephones used by the targets of the investigation had been "useful in revealing some of the associations and frequency of contact of the other known participants." Id. at ¶ 120. Therefore, Defendant argues, Special Agent Sachs improperly dismissed the value of these particular investigative methods in this case. In paragraphs 113 through 115 of the Affidavit, Agent Sachs describes some of the physical surveillance that was conducted, and explained its usefulness as well as limitations. Agent Sachs specifically noted that one of the confidential informants had advised that Marcello Grasso, one of the named interceptees, believed that he was under physical surveillance. This factor is significant in determining the ineffectiveness of further physical surveillance techniques.

Defendant further argues that Agent Such's statement that he "did not believe it would be possible for an [Undercover Agent] to independently infiltrate this group" is misleading in that a cooperative witness named David Alwais will testify that he did indeed infiltrate the group, and that he was able to wear a body wire. As further discussed below, the Government has proffered that although Mr. Alwais was a cooperating witness in other investigations, Mr. Alwais did not make any mention of any of the defendants in this case, or begin cooperating with the Government in this case, until December, 1998. Therefore, he was not "available" to the Government at the time Agent Sachs made the affidavit and applications at issue. Merely because the Government, several months later, was fortunate enough to use Mr. Alwais, who was willing to take the risk of infiltrating the organization alleged in this case, does not mean that the Government could have been required to

3

seek out such person at the time the affidavit and applications were made.[1]

Defendant analogizes this case to United States v. Kalustian, 529 F.2d 585 (9th Cir. 1976), in which the Ninth Circuit held that generalizations in a wiretap affidavit based on "knowledge and experience" gained in other gambling cases that "gamblers frequently do not keep permanent records" was insufficient to justify a wiretap. Id. at 588. The Court noted that the Government had failed to make a showing why traditional investigation techniques were not sufficient "in [that] particular case." Id. at 590. Defendant argues that the affidavit in this case suffers from the same infirmity, in that SA Sachs made the following statement:

> From prior investigations and reports of other Agents, your affiant knows that the Luchese LCN Crime Family is extremely sophisticated in detecting and avoiding investigations by law enforcement agencies. This has made conventional investigative techniques, such as interviews, of little value.

Sachs Aff. 9/8/98, ¶118. This Court finds Agent Sachs' statement distinguishable from the situation the Court was concerned with in Kalustian. In that case, there was no indication that the agent was familiar with the particular organization under investigation, whereas in this case, Agent Sachs stated that he had specific experience with the Luchese LCN Crime Family, and was aware of its techniques, rather than general experience with bookmaking operations.

Defendant additionally argues that Agent Sach's statement that search warrants "would not provide sufficient evidence necessary to determine the full scope of the criminal conspiracies, the identity of all the co-conspirators and the various methods used to run this criminal enterprise" is

---

[1] Defendant argues that the use of an undercover agent posing as "an enthusiastic sports bettor" was never attempted. This Court agrees with the Government that, considering the players and the scheme involved in this particular case, an undercover agent posing in this limited capacity would be of minimal assistance in investigating the inner-workings of the organization.

4

misplaced because a search warrant executed in the case resulted in the discovery of betting slips, audiotapes of alleged "betting" conversations, and documents with alleged names of bettors and amounts of bets. This Court agrees with the Government that the fact that one of the participants believed he was under surveillance increased the possibility that records would not be maintained. Furthermore, these documents and audiotapes would not necessarily implicate all of the participants in the conspiracy.

Defendant also takes issue with Agent Sachs' statement that the informants were not willing to introduce a law enforcement officer because they were afraid this would expose them as informants. This Court finds this to be credible, and further finds merit in the Government's position that this factor, as well as the "close knit" nature of the organization under investigation made the successful introduction of an undercover agent unlikely.[2]

Similarly, Agent Sachs stated that one of the problems with using confidential informants was that they were afraid to testify and had advised the FBI that they would be "unwilling to testify at any proceeding for fear of their safety." Sachs Aff. at ¶ 107. Although Defendant is correct that witnesses' fear of testifying is not a basis on which a witness may legally refuse to testify (see, e.g., Matter of Grand Jury Investigation, 922 F.2d 1266, 1272-73 (6th Cir. 1991)) danger to witnesses is one of the grounds that a court may consider when determining whether electronic surveillance is appropriate in a particular case. See Van Horn, supra. In this case, Agent Sachs noted that the particular group of which the Defendant was a member was involved in a wide variety of criminal

---

[2]In his reply, Defendant argues that because David Alwais allegedly was able to introduce a third party named Rocco Cologgi to some of the defendants in the case, Mr. Alwais could have as easily introduced an undercover agent into the organization. In a Surreply filed pursuant to Court Order, the Government responds that Mr. Alwais was not cooperating with the Government in this case until after December 15, 1998. This Court agrees that because the last application was executed on November 16, 1998, this argument is irrelevant.

acts. Sachs Aff. at ¶¶ 48, 49, 49A, 49B, 49C, 49D.

This Court finds that Special Agent Sachs discussed the more traditional forms of investigation that had been tried and failed, in sufficient detail as to the facts of the particular investigation, such that the affidavit sufficiently complied with 18 U.S.C. §2518.

## II. Franks Hearing

In his Reply, Defendant moves for a hearing under Franks v. Delaware, 438 U.S. 154 (1978), arguing that Agent Sachs' failure to disclose the existence and cooperation of Mr. Alwais in the affidavit was a significant material omission to the Magistrate Judge. In addition to being untimely raised, this Court finds the argument to be without merit. Defendant bases his position on a statement made by a prosecutor at Mr. Alwais' sentencing hearing, which occurred on October 29, 1999, in which the prosecutor stated that Mr. Alwais "began cooperating in about the fall of 1998." The prosecutor then detailed that cooperation, first with federal authorities in South Florida, regarding "a significant Gambino Mafia investigation that was pending at that time." Trans. p 4. The prosecutor then stated that Mr. Alwais "worked with agents of the FBI and also gave information regarding Luchese and Colombo Mafia targets." Id.

In its Court-ordered Surreply, the Government proffered that although Mr. Alwais, who had met two of the defendants in this case while he was in prison, did begin cooperating with the Government in September, 1998, his initial cooperation was regarding another investigation. The Government further proffers that Mr. Alwais did not provide any cooperation with respect to the instant case until after he had met Defendant Nicolo Mariani in December, 1998. As there is nothing inconsistent with this proffer and the sentencing transcript, and Defendant has presented no additional evidence that Mr. Alwais was cooperating with the Government on this case at the time that Agent Sachs prepared the affidavits, Defendant is not entitled to a Franks hearing.

### Recommendation

Based on the foregoing, this Court respectfully recommends that the Motion to Suppress Fruits of Wiretaps be **DENIED**.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Ursula Ungaro-Benages, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this /1st/ day of August, 2001 at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc:   Honorable Ursula Ungaro Benages
      counsel on attached list

## SERVICE LIST

United States v. Marco Minuto, et al.
Case No. 00-6088-Cr-Ungaro-Benages

**Antonio E. Marin, Esq.**
2100 Coral Way
Miami, FL 33145
(305) 857-0209
(305) 854-6107 (Fax)
(*Attorney for Alex Torrente*)

**Michael J. Dittoe, AUSA**
U.S. Attorney's Office
500 E. Broward Boulevard
7th Floor
Ft. Lauderdale, FL 33301
(954) 356-7392
(954) 356-7336 (Fax)
(*Attorney for the Government*)

**Manuel Gonzalez, Jr., Esq.**
782 N.W. 42nd Avenue
Suite 440
Miami, FL 33126
(305) 567-0100
(305) 445-0543 (Fax)
(*Attorney for Nelson Robles*)

**Hosey Hernandez, Esq.**
Coconut Grove Bank Building
2701 S. Bayshore Drive
Coconut Grove, FL 33133
(305) 859-2222
(305) 858-6097 (Fax)
(*Attorney for Angel Hernandez*)

**William J. Hunt, Esq.**
155 Polifly Road
Hackensack, NJ 07601
(201) 457-9200
(201) 996-1669 (Fax)
(*Attorney for Joseph Minuto*)

**Martin R. Raskin, Esq.**
Raskin & Raskin
Grove Forest Plaza, Suite 206
2937 S.W. 27th Avenue
Miami, FL 33133
(305) 444-3400
(305) 445-0266 (Fax)
(*Attorney for Joseph Minuto*)

**Howard M. Srebnick, Esq.**
201 S. Biscayne Blvd.
Miami, Fl 33131
(*Attorney for Marco Minuto*)

**Simon T. Steckel, Esq.**
701 Brickell Avenue
Miami, FL 33131
(305) 373-1900
(305) 536-6495 (Fax)
(*Attorney for Marcello Grasso*)

**Jeffrey S. Weiner, Esq.**
9130 S. Dadeland Boulevard
Miami, FL 33156
(305) 670-9919
(305) 670-9299 (Fax)
(*Attorney for Chris Greco*)

**Bruce A. Zimet, Esq.**
One Financial Plaza
Suite 2612
Ft. Lauderdale, FL 33394
(954) 764-7081
(954) 760-4421 (Fax)
(*Attorney for Nicolo Mariani*)