UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

NIGHTBOX
FILED
AUG 20 2001
CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

CASE NO. 00-CR-6088-UNGARO-BENAGES

UNITED STATES OF AMERICA,           :
   Plaintiff,                       :
v.                                   :
MARCO MINUTO,                        :
   Defendant.                       :

### DEFENDANT MARCO MINUTO'S OBJECTIONS TO MAGISTRATE JUDGE BROWN'S ORDER ON MR. MINUTO'S SPECIFIC BRADY REQUEST RE: COOPERATING WITNESSES

Pursuant to Kyles v. Whitley, 514 U.S. 419 (1995), United States v. Bagley, 473 U.S. 667 (1985), United States v. Agurs, 427 U.S. 97 (1976), United States v. Giglio, 405 U.S. 150 (1972), Brady v. Maryland, 373 U.S. 83 (1963), Napue v. Illinois, 360 U.S. 264 (1959), and Federal Rule of Criminal Procedure 16, Marco Minuto moved for an order directing the government to disclose and provide specific information pertaining to the witnesses in this case. Mr. Minuto objects to the Magistrate Judge's rulings and the government's position as follows:

**1. THE CASE NAME AND CASE NUMBER OF ALL CASES IN WHICH THE WITNESS HAS ASSISTED OR COOPERATED WITH THE GOVERNMENT, AS WELL AS THE CASE NAME AND CASE NUMBER OF ANY TRIALS OR HEARINGS IN WHICH THE WITNESS HAS TESTIFIED:**

Magistrate Judge Brown denied this request as moot based on the government's indication that only one of its witnesses, David Alwais, has testified in a prior trial and that

his testimony has been made available to Mr. Minuto. Based on this representation by the government, we have no objection to the Magistrate's ruling.

2. **ALL INFORMATION DETAILING WHETHER MONEY WAS GIVEN TO THE WITNESS OR THE WITNESS'S FAMILY, FRIENDS, OR ASSOCIATES IN ANY CASE, AS WELL AS INFORMATION REGARDING PROMISES OF IMMUNITY OR LENIENCY, PREFERENTIAL TREATMENT, OR OTHER INDUCEMENTS MADE TO THE WITNESS, OR TO ANY FAMILY MEMBER, FRIEND OR ASSOCIATE OF THE WITNESS, INCLUDING THE DISMISSAL OR REDUCTION OF CHARGES, PLEA NEGOTIATIONS, ASSISTING IN MATTERS OF SENTENCING OR DEPORTATION, OR PROMISES OR EXPECTANCIES REGARDING PAYMENTS FOR EXPENSES, TESTIMONY, OR ELIGIBILITY FOR ANY AWARD OR REWARD:**

Mr. Minuto objects to the government's position and the Magistrate's ruling that Brady and Giglio do not require the government to disclose promises or offers made to witnesses other than those resulting in formal plea agreements or payments of money. According to the government, "<u>all</u> witnesses were offered various forms of possible government assistance based on their fear of the defendant's [sic] in this case." [Government's Supplemental Response to Marco Minuto's Motion for Specific Brady Information at 4]. Mr. Minuto requests that the government disclose with specificity the "various forms of possible government assistance" offered to each witness.

The government argued, and Magistrate Judge Brown seems to have agreed, that the government need not disclose a witness's expectations of leniency or financial gain. According to the government, disclosing such expectations would require the government "to speculate as to what the witness expects and is not possible because it would require the government to know and speculate about the <u>subjective</u> hopes and feelings of another person and this is not possible." [Government's Supplemental Response to Marco Minuto's Motion for Specific Brady Information at 4] (emphasis in original).

Whether a witness has expectations of leniency or financial gain is not necessarily a matter of speculation. A witness's expectations can be evidenced by his prior

-2-

experiences, his own statements, or by the suggestions of agents or prosecutors. If the government has information pertaining to a witness's expectations of leniency or financial gain, that information must be disclosed under Giglio and Brady.

In United States v. Riskin, 788 F.2d 1361 (8th Cir. 1986), cert. denied, 479 U.S. 923 (1986), the court held that the government was required to disclose that its cooperating witness had an expectation that he would receive a payment from the FBI after the defendant was sentenced. In Riskin, the government disclosed before trial that the FBI had paid government witness Greenfield $750. Greenfield had worked for the FBI before. Under cross-examination, Greenfield and the FBI agent denied that Greenfield had been promised additional money. Id. at 1372.

At sentencing, defense counsel stated that he had heard that Greenfield would be paid an additional $5,000 and that Greenfield intended to use that money to go to Hawaii. The prosecutor responded that he did not know anything about an additional payment to Greenfield or a trip to Hawaii. A few months after sentencing, the prosecutor advised the court and defense counsel that after the trial, the FBI paid Greenfield $5,000. Id.

The district court conducted an evidentiary hearing and found that "no express agreement between [the FBI] or anybody else on behalf of the FBI and Greenfield existed in advance of or during the trial concerning a post-trial payment to be made to Greenfield." Id. at 1373. However, the district court also found that "before and during the trial, there was an implied understanding between . . . the FBI [agent] and Greenfield about the possibility of a post-trial payment to Greenfield." Id. The district court found that "[t]here was no understanding as to the amount of the payment," but that "there was an implied understanding that the making of such payment and the amount thereof might depend on

whether [Riskin] was convicted." Id. The court explained how it reached this conclusion:

> This ultimate fact finding rests on the entire record made at the remand hearing. Among the more compelling evidentiary facts leading to this ultimate fact finding are: Greenfield's past experience in being paid as an FBI informant; the conversation between Greenfield and [the FBI agent] on May 4 [, 1984,] in which Greenfield was told that there would be compensation for reliable information and that the amount would depend upon the quantity and quality of the information; Greenfield had been paid for his services up to May 29 but he had received nothing for his services as a witness in two pretrial hearings and at the trial and for the extensive time he spent being debriefed by government agents in preparation for the trial, and he had received nothing for his degradation in the eyes of his social peers for becoming an FBI informant; [the FBI agent's] contemplation during the pretrial hearings and the trial of the possibility of paying Greenfield more after the trial; the FBI's occasional, if not common, practice of making payments after trial; the FBI's practice of considering a conviction, along with other factors, in deciding whether to make a payment; and last but not least, Greenfield's statements to people during the summer and early autumn of 1984 that he was going to receive a large payment or other handsome reward after the trial.

Id.

The Eighth Circuit held that "[t]he government should have disclosed the implied understanding that existed between Greenfield and the FBI about the possibility of a post-trial payment. The defense could have used this information to further impeach Greenfield's credibility." Id. at 1375. While the court ultimately ruled that the government's failure to disclose this information was not material to the jury's verdict, the court emphasized that it's holding "should not be construed as approval of the government's conduct. The fact remains that the government's failure to disclose known evidence favorable to the accused is incompatible with Brady v. Maryland, even though non-disclosure in a particular case may not warrant reversal under the reformulated standard of materiality set forth in United States v. Bagley." Id.

Consistent with Riskin, Mr. Minuto seeks disclosure not only of actual payments and

promises made to government witnesses, but also of expectations that a witness may harbor of payments, leniency, or other benefit.

      **3.**   **ANY INFORMATION CONCERNING ACTUAL OR IMPLIED THREATS OF INVESTIGATION OR PROSECUTION (FOR EXAMPLE DEPORTATION, EXCLUSION BY INS, ADMINISTRATIVE MATTERS, ETC.) OF ANY WITNESS, HIS FRIENDS, FAMILY MEMBERS, OR ASSOCIATES, AS WELL AS INFORMATION PERTAINING TO THE CONDUCT PRECIPITATING SUCH INVESTIGATION OR PROSECUTION.**

The government stated in its supplemental response that "any promises to the witnesses were reduced to writing." [Government's Supplemental Response to Marco Minuto's Motion for Specific Brady Information at 5]. Based on this representation, we have no objection to the Magistrate Judge's ruling as to this specific Brady request. We simply ask that all such writings be turned over to Mr. Minuto before trial. So far, we have copies of the cooperation plea agreements of cooperating government witnesses Marcello Grasso, David Alwais, and Alex Torrente. If additional writings exist, we request that they be disclosed.

      **4.**   **ANY INFORMATION PROVIDED BY THE WITNESS THAT CONFLICTS IN PART OR IN WHOLE WITH INFORMATION PROVIDED BY ANOTHER WITNESS, OR PRIOR INFORMATION PROVIDED BY THE SAME WITNESS:**

Agreeing with the government, the Magistrate Judge ruled that the government's disclosure was limited to Jencks Act materials. This narrow ruling overlooks the government's Brady obligation to disclose whether its witnesses have provided contradictory information. If government witnesses have provided inconsistent or contradictory information, there is no reason not to disclose this to the defense. The government's Brady obligation to disclose impeachment information is not limited by the

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BLVD, SUITE 1300, MIAMI, FL 33131• (305) 371-6421

Jencks Act.

5. **ALL INFORMATION PERTAINING TO THE CRIMINAL ACTIVITIES OF THE WITNESS FOR WHICH THE GOVERNMENT HAS ELECTED, FORMALLY OR INFORMALLY, NOT TO PROSECUTE:**

The Magistrate Judge agreed with the government that "prior criminal acts of witnesses, not resulting in a conviction and not related to truthfulness, do not have to be disclosed." [Government's Supplemental Response to Marco Minuto's Motion for Specific Brady Information at 6]. Mr. Minuto respectfully objects.

Evidence that the witness has committed a crime and has not been prosecuted for it is admissible to show bias. Mr. Minuto seeks disclosure of this evidence not to attack the character of a witness in contravention of Federal Rule of Evidence 608, but to expose the bias of a government witness who hopes that he will not be prosecuted for his crimes. Bias is almost always relevant and at issue. United States v. Abel, 469 U.S. 45, 52 (1984) (noting that proof of bias is "almost always relevant" to a jury's assessment of "the accuracy and truth of a witness' testimony").

6. **INFORMATION CONCERNING PRIOR MISCONDUCT BY THE WITNESS, INCLUDING ANY REFUSAL TO TESTIFY FOR OR ASSIST THE GOVERNMENT; ANY PRIOR ALLEGATION THAT THE WITNESS ENTRAPPED ANOTHER PERSON OR MADE FALSE STATEMENTS IN CONNECTION WITH ANY INVESTIGATION; ANY INFORMATION SUGGESTING OR TENDING TO SUGGEST THAT THE WITNESS OR THE INFORMATION SUPPLIED BY THE WITNESS IS UNRELIABLE OR UNTRUSTWORTHY; AND ANY PRIOR "BLACKBALLING" OF THE WITNESS BY ANY LAW ENFORCEMENT AGENCY:**

7. **INFORMATION CONCERNING CONDUCT BY THE WITNESS THAT REFLECTS ON THE WITNESS'S LACK OF CANDOR, TRUTHFULNESS, OR LAW-ABIDING CHARACTER.**

8. **ALL INFORMATION INDICATING THAT THE WITNESS, IN CONNECTION WITH THIS OR ANY OTHER CASE, HAS PROVIDED UNTRUTHFUL, FALSE, MISLEADING, INCOMPLETE, OR INACCURATE INFORMATION OR TESTIMONY TO ANY STATE OR FEDERAL LAW ENFORCEMENT OFFICER OR AGENCY, ANY STATE OR FEDERAL GRAND JURY, OR ANY STATE OR FEDERAL COURT.**

Jencks Act.

5. **ALL INFORMATION PERTAINING TO THE CRIMINAL ACTIVITIES OF THE WITNESS FOR WHICH THE GOVERNMENT HAS ELECTED, FORMALLY OR INFORMALLY, NOT TO PROSECUTE:**

The Magistrate Judge agreed with the government that "prior criminal acts of witnesses, not resulting in a conviction and not related to truthfulness, do not have to be disclosed." [Government's Supplemental Response to Marco Minuto's Motion for Specific Brady Information at 6]. Mr. Minuto respectfully objects.

Evidence that the witness has committed a crime and has not been prosecuted for it is admissible to show bias. Mr. Minuto seeks disclosure of this evidence not to attack the character of a witness in contravention of Federal Rule of Evidence 608, but to expose the bias of a government witness who hopes that he will not be prosecuted for his crimes. Bias is almost always relevant and at issue. United States v. Abel, 469 U.S. 45, 52 (1984) (noting that proof of bias is "almost always relevant" to a jury's assessment of "the accuracy and truth of a witness' testimony").

6. **INFORMATION CONCERNING PRIOR MISCONDUCT BY THE WITNESS, INCLUDING ANY REFUSAL TO TESTIFY FOR OR ASSIST THE GOVERNMENT; ANY PRIOR ALLEGATION THAT THE WITNESS ENTRAPPED ANOTHER PERSON OR MADE FALSE STATEMENTS IN CONNECTION WITH ANY INVESTIGATION; ANY INFORMATION SUGGESTING OR TENDING TO SUGGEST THAT THE WITNESS OR THE INFORMATION SUPPLIED BY THE WITNESS IS UNRELIABLE OR UNTRUSTWORTHY; AND ANY PRIOR "BLACKBALLING" OF THE WITNESS BY ANY LAW ENFORCEMENT AGENCY:**

7. **INFORMATION CONCERNING CONDUCT BY THE WITNESS THAT REFLECTS ON THE WITNESS'S LACK OF CANDOR, TRUTHFULNESS, OR LAW-ABIDING CHARACTER.**

8. **ALL INFORMATION INDICATING THAT THE WITNESS, IN CONNECTION WITH THIS OR ANY OTHER CASE, HAS PROVIDED UNTRUTHFUL, FALSE, MISLEADING, INCOMPLETE, OR INACCURATE INFORMATION OR TESTIMONY TO ANY STATE OR FEDERAL LAW ENFORCEMENT OFFICER OR AGENCY, ANY STATE OR FEDERAL GRAND JURY, OR ANY STATE OR FEDERAL COURT.**

We have no objection to the Magistrate Judge's ruling that the government must disclose any information in its possession which indicates that a witness was untruthful in an investigation or court proceeding, and any misconduct which directly reflects the witness's capacity for untruthfulness. We do object, however, to the government's argument that "[t]he United States is <u>not</u> required to produce <u>Brady</u> material that is possessed by an agency over which the prosecutor does not have authority, e.g., agencies not involved in the investigation." [Government's Supplemental Response to Marco Minuto's Motion for Specific <u>Brady</u> Information at 8] (emphasis added).

The government cannot blind itself to <u>Brady</u> material simply because an outside agency may be involved. If the prosecutor knows that <u>Brady</u> material is held by <u>any</u> agency, the prosecutor has an affirmative personal obligation to disclose that information to the defense. <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995). The cases cited by the government do not hold that the duty to disclose is limited to information held by agencies involved in the case. Instead, these cases hold only that a <u>Brady</u> violation does not occur where the government has no knowledge of undisclosed impeaching or exculpatory information. <u>United States v. Sepulveda</u>, 15 F.3d 1161, 1178-19 (1st Cir. 1993) (prosecution not required to disclose probation report about which it had no knowledge); <u>United States v. Veksler</u>, 62 F.3d 544, 550 (3d Cir. 1995) (prosecutor's failure to disclose information of which defendant was aware and which defendant never requested under <u>Brady</u> not reversible error); <u>United States v. Capers</u>, 61 F.3d 1100, 1103-04 (4th Cir. 1995) (prosecutor's failure to turn over notebook which informant kept with notes of his observations not <u>Brady</u> violation because government did not know informant kept notes); <u>United States v. Lochmondy</u>, 890 F.2d 817, 823-24 (6th Cir. 1989) (prosecutor not required

to turn over tax returns about which he was not aware); <u>United States v. Skorniak</u>, 59 F.3d 750, 755-56 (8th Cir. 1995) (prosecutor not required to subpoena psychiatric records of witness when defendant was aware of witness's psychiatric condition and would have been permitted to explore the condition on cross-examination).

Mr. Minuto also objects to the government's position that the refusal of a witness to testify for or assist the government is not discoverable under <u>Brady</u>. According to the government, "no person is required to give information to law enforcement (unless subpoenaed), therefore, it is not misconduct to refuse to give information, e.g. to invoke the Fifth Amendment." [Government's Supplemental Response to Marco Minuto's Motion for Specific <u>Brady</u> Information at 7].

First, a defendant who enters into a cooperation plea agreement with the government has a contractual obligation to testify and provide information to the government. Failure to do so could result in revocation of the plea agreement. If a cooperating government witness has refused to testify or provide information in contravention of his cooperation plea agreement, Mr. Minuto is entitled to know about it. This is particularly true where the witness's refusal to cooperate did not result in revocation of the plea agreement.

Second, a witness other than a cooperating defendant, who initially refuses to testify but subsequently does so, may be operating under pressure by the prosecutor or the agents. Mr. Minuto is entitled to explore on cross-examination the witness's motivation to change his mind and testify on the government's behalf. Mr. Minuto's jury is entitled to know if a government witness is testifying under fear of governmental action and whether that witness is motivated to accommodate his testimony to fit the government's theory of

prosecution.

**9.   INFORMATION REFLECTING THE NATURE AND EXTENT OF ASSETS OBTAINED BY THE WITNESS IN CONNECTION WITH HIS ILLEGAL ACTIVITIES:**

The Magistrate Judge denied this request based on the government's argument that "this information is relevant only if there was an agreement not to forfeit certain assets." [Government's Supplemental Response to Marco Minuto's Motion for Specific <u>Brady</u> Information at 9]. Mr. Minuto objects. A witness who is permitted to retain ill-gotten assets is biased in favor of the government notwithstanding the lack of a formal forfeiture agreement.  The absence of a formal forfeiture agreement may actually strengthen the witness's motivation to curry favor with the prosecutor, because in the mind of the witness, he must please the prosecutor or risk losing his assets.  Mr. Minuto submits that disclosure of a government witness's ill-gotten assets is required, regardless of the existence or nature of a forfeiture agreement.

**10.   IF GIVEN A POLYGRAPH EXAMINATION, THE QUESTIONS, ANSWERS, AND RESULTS OF THE EXAMINATION, AS WELL AS ANY INFORMATION CONCERNING THE REFUSAL OF ANY WITNESS TO SUBMIT TO A POLYGRAPH EXAMINATION:**

Magistrate Judge Brown denied this request as moot based on the government's representations that "the result of a prior polygraph examination given by another law enforcement agency to David Alwais has been supplied to the defense." [Government's Supplemental Response to Marco Minuto's Motion for Specific <u>Brady</u> Information at 9].

The government has provided the results of two Secret Service polygraph examinations that cooperating government witness David Alwais failed. We believe that Alwais failed a third polygraph examination in the case of <u>United States v. David Alwais</u>, Case No. 86-6244-CR-Nesbitt. We request that the government inquire of its agents and

its witness and disclose the results of this third polygraph examination, if it took place.

**11.** **ALL INFORMATION REVEALING ANY POTENTIAL IMPAIRMENT OF THE CAPACITY OF ANY WITNESS TO OBSERVE, RECOLLECT, OR TESTIFY ABOUT THE EVENTS GIVING RISE TO THE CHARGES IN THIS CASE, INCLUDING IMPAIRMENTS OF SIGHT, HEARING, MEMORY, LANGUAGE, OR OTHER PHYSICAL OR PSYCHOLOGICAL DISABILITY.**

**12.** **ALL INFORMATION INDICATING THAT ANY WITNESS MAY HAVE SUFFERED FROM A MENTAL OR EMOTIONAL DISEASE, DISORDER, ILLNESS, OR DEFECT AT ANY TIME DURING THE TIME SPAN ALLEGED IN THE INDICTMENT OR AT THE TIME THE WITNESS TESTIFIES.**

**13.** **ALL INFORMATION INDICATING WHETHER THE WITNESS MAY HAVE USED COCAINE, MARIJUANA, OTHER CONTROLLED SUBSTANCE, OR USED ALCOHOL TO EXCESS AT ANY TIME DURING THE TIME SPAN ALLEGED IN THE INDICTMENT FILED IN THIS CASE OR AT THE TIME THE WITNESS TESTIFIES.**

Based on the government's representations that it has turned over all information pertaining to these requests, we have no objection.

Respectfully submitted,

**BLACK, SREBNICK & KORNSPAN, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
(305) 371-6421


By: _[signature] For_
   **HOWARD M. SREBNICK, ESQ**
   Florida Bar Number 919063
   Attorney for Marco Minuto

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _August 21, 2001_ 2001 a true and correct copy of the foregoing was furnished by fax and mail to:

Michael J. Dittoe, Esq.
Assistant United States Attorney
500 East Broward Boulevard
7th Floor
Fort Lauderdale, Florida 33394-3002

Bruce A. Zimet, Esq.
Counsel for Nicolo Mariani
One Financial Plaza
Suite 2612
Fort Lauderdale, Florida 33394

William J. Hunt, Esq.
Counsel for Joseph Minuto
William J. Hunt & Associates
155 Polifly Road
Suite 200
Hackensack, New Jersey 07601

Kerry A. Lawrence, Esq.
Counsel for Chris Greco
Briccetti, Calhoun & Lawrence, LLP
81 Main Street
Suite 450
White Plaines, New York 10601

By: _[signature] for_
**HOWARD M. SREBNICK, ESQ.**
Attorney for Marco Minuto